**People of the State of Illinois, Plaintiff-Appellee, v. Bahige N. Abdallah, Defendant-Appellant.**

**Gen. No. M–51,766.**

First District, Second Division.

April 11, 1967.

Redman and Shearer, of St. Charles, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Ronald Magnes and Robert Novelle, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Defendant was found guilty at a bench trial of violating the posted speed laws of the State of Illinois in

operating his automobile 14 miles per hour in excess thereof. He was assessed a fine of $10 and costs of the suit in the sum of $5. He appeals.

State Police Officer F. J. Schmelzer testified that during the early morning on May 28, 1966, he set up a radar device on his patrol car on a section of highway in Cook County bearing a posted speed limit of 65 miles per hour. The officer tested the radar device by means of a tuning fork which was cut to read 65 miles per hour. The frequency emission, or pitch, of the tuning fork, when struck, activated the needle on the radar device which in turn indicated a reading of 65 miles per hour. At approximately 3:40 that morning defendant's automobile passed through the field of influence generated by the officer's radar device and caused the meter to read 79 miles per hour. Defendant was pursued, arrested and given a citation for speeding.

The officer further testified that he had one-half day training in the operation of the radar device with a fellow officer and that he had some five and one-half years on-the-job experience with radar equipment of the type used on the night in question prior to defendant's arrest. The officer stated that the tuning fork test was the only means used by him to determine the accuracy of the radar device. The device was tested in this manner immediately before the defendant's automobile drove through its zone of influence, resulting in a reading of 65 miles per hour. It was similarly tested several times later that night and on each occasion the meter showed a reading of 65 miles per hour.

The court denied a defense motion for judgment in defendant's favor made during the State's case in chief; the motion was renewed after the State rested its case. The grounds of the motion were that the "prosecution had failed to prove the accuracy of the radar by failure to submit expert evidence of its scientific reliability,

and that there had been an improper foundation set down before the admission into evidence of the reading on the [radar] graph." The motion was denied and the defendant was found guilty. The defendant did not offer any testimony.

Defendant maintains on this appeal that the trial court improperly took judicial notice of the application of the scientific principles of radar to the accurate measurement of speed, or, in the alternative, that the operator of the radar unit was not properly qualified to testify to the accuracy and operation of the instrument in that the accuracy of the instrument could not have been established solely by means of a single tuning fork which was itself untested for accuracy.

■ The term "radar" is derived from the phrase "radio detection and ranging." The true radar device is that developed and in use by the military which determines the range, direction and speed of a target object. It operates on a pulse, or constant interval principle, a beam of short electromagnetic waves which are reflected from the target object. The "radar" device presently in common use by law enforcement agencies for the determination of speeds of moving vehicles, on the other hand, operates on the Doppler principle, that is, the emission of a continuous electromagnetic wave which enables the speed of a target object to be determined by measuring the difference in frequency between the wave emitted from the radar device and the wave reflected from the object. Kopper, The Scientific Reliability of Radar Speedmeters, 33 NCL Rev 343. It is presently so well settled that the Doppler principle is an accurate means of determining the speed of a moving object that a court may take judicial notice thereof; and expert testimony is unnecessary to establish the usefulness of the method. City of Cleveland v. Ferell, 168 Ohio St 298, 154 NE2d 630; State v. Dantonio, 18 NJ

315

570, 115 A2d 35; People v. Magri, 3 NY2d 562, 147 NE 2d 728, 730; see also 49 ALR2d 469 and 61 CJS, Motor Vehicles, §§ 647, 648.

■ While the principles underlying radar may serve as a proper foundation for taking judicial notice that radar is an accurate means of determining the speed of a moving object, it does not necessarily follow that any given radar unit, standing alone, is able to accurately detect the speed of a moving object. Where the accuracy of a particular radar device is unproven, the results thereof will be insufficient to convict for a traffic violation, although such results are admissible as evidence. People v. Magri, 3 NY2d 562, 147 NE2d 728. Where, on the other hand, there is reasonable and sufficient proof of the accuracy of the radar instrument, the reading taken therefrom may of itself be sufficient for a conviction. People v. Dusing, 5 NY2d 126, 155 NE 2d 393.

■ Defendant maintains that the tuning fork used to test the accuracy of the radar device was itself untested for accuracy and that therefore the operator was not qualified to testify to the accuracy of the device. We disagree. The officer testified that he made several tests with the tuning fork prior and subsequent to the time defendant passed into the radar field, and that the meter on each occasion showed a reading of 65 miles per hour. The officer further testified that it was his opinion the radar unit was working properly, that there was no outside interference which could have influenced the reading, and that only defendant's automobile was within the zone of the radar beam at the time the meter showed a reading of 79 miles per hour. The officer had been instructed in the operation of the radar device and had five and one-half years on-the-job experience in its use. We are of the opinion that there was sufficient proof of the accuracy of the radar unit for the trier of

316

fact to find defendant guilty of speeding based solely upon the reading taken from the radar unit.

 Defendant maintains that the arresting officer was "wholly unqualified to operate any radar set under any circumstances," because he had no knowledge of the scientific principles involved in the operation of a radar instrument, had no knowledge of the frequency or power output of the instrument, and had no knowledge of the scope of the radar beam, and the like. The operator of a radar instrument does not have to be an expert in the science or theory underlying the functions of the instrument. It is sufficient that he is familiar with the device and its operation, the evidence of which presents a question of weight and credibility for the jury. People v. Johnson, 23 Misc 11, 196 NYS2d 227. In the case at bar the officer had five and one-half years on-the-job experience with this type of radar equipment.

Defendant relies on the case of City of St. Louis v. Boecker (Mo App), 370 SW2d 731 (1963), in support of his proposition that the testing of a radar device by a single tuning fork will not suffice to establish its accuracy. However, the Court in the Boecker case at 370 SW2d 731, 737, specifically limited its reversal of the defendant's conviction on the fact that the only test of the radar unit there employed in determining the speed of defendant's vehicle was made at "some unknown time and some unknown place" prior to defendant's arrest. No test was made at the time and place of the arrest. The Court concluded that because the accuracy of the instrument could have been influenced by movement, locality, etc., the accuracy was not sufficiently proven and the evidence derived from the instrument, standing alone, was insufficient to prove defendant guilty. In the case at bar, however, a test of the radar equipment was made at the site of the arrest immediately before the arrest was made and again several times thereafter,

and in each instance the equipment was shown to have been properly functioning.

For these reasons the judgment is affirmed.

Judgment affirmed.

LYONS, P. J. and BRYANT, J., concur.