**People of the State of Illinois, Plaintiff-Appellee, v. Frank M. Stankovich, Defendant-Appellant.**

**Gen. No. 69–64.**

Second District.

February 5, 1970.

Errett O. Graham and Sidney Z. Karasik, of Chicago, for appellant.

William V. Hopf, State's Attorney, of Wheaton, and A. E. Botti, Assistant State's Attorney, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

At issue in this case are the following questions: Whether there was sufficient foundation for the introduction of radar evidence of speeding; whether the radar unit was functioning properly at the time; and whether the defendant was proven guilty beyond a reasonable doubt.

The defendant was charged with driving 76 m. p. h. in a posted speed zone of 55 m. p. h., on Route 64 near Pearl Street in the Village of Glendale Heights. At the place in question, Route 64 is a straight four-lane highway, with some inclines and declines in its surface.

Ray W. Markham, a police officer of the Village, was the principal witness for the State. He testified that on the date in question, at 9:10 p. m., he was on routine traffic duty in this area; that his car was parked next to Route 64 facing east, about 300 feet east of Pearl Street, with the radar cone pointed west; that the unit was set to pick up eastbound traffic; that he was conducting a radar check on eastbound traffic on Route 64; that he observed an automobile approaching the squad

car, travelling rapidly in an eastbound direction in the outer lane of Route 64; that as the car entered the radar beam, its speed, as indicated on the radar meter, was at 76 m. p. h.; that this speed was observed for 200 to 300 feet; and that he activated the lock switch, which locked the meter at 76 m. p. h.

As the defendant's car proceeded eastward, the police gave chase immediately, and when the defendant's car stopped for the stop light at Glen Ellyn Road, the police car approached, and the officers signalled him to pull off the highway, which he did. Officers Markham and Thien, and the defendant had a conversation while standing between the police car and the defendant's car. Officer Markham testified that he asked the defendant if he was aware of the speed limit in this area and the defendant replied that it was 65 m. p. h., or better; that he, Markham, informed the defendant there were several signs in the area posting the maximum speed limit at 55 m. p. h.; that he asked the defendant if he knew how fast he was travelling and the defendant said 63 m. p. h.; and that he asked the defendant if he was watching his speedometer and the defendant said he was not, but that he was driving 63 m. p. h.

Officer Markham further testified that he informed the defendant that the police car had been parked on the highway; that the officers had observed his car approach, had measured its speed on the radar, and he was travelling 76 m. p. h.; and that the defendant stated this was not possible in that he was driving 63 m. p. h. Markham also stated that no other traffic was present as the defendant's car came within the beam of the radar, although two other cars had previously gone eastward in the center traffic lane.

The testimony and exhibits established that the police car was stationed at the bottom of a slight hill across the highway from a Chevrolet agency, and that

business buildings were on both sides of North Avenue, which was in the area where the radar check was made on the defendant's car.

Officer Markham also testified that the radar machine had been in use for three hours prior to the "clocking" of the defendant's car, and that it "was more than warmed up." He stated that the unit was always allowed to warm up for twenty to thirty minutes before it is used; that after the warm-up period, the battery test button is pressed and if it indicates over 20 m. p. h. the unit "is sufficiently warmed up."

He further stated that on this occasion, the radar was tested by means of a tuning fork which is preset to give off vibrations of 65 m. p. h.; that the fork is activated by striking it against a solid object and it is then held perpendicular to the radar transmitting head; that the vibrations from the fork cause a speed reading on the radar meter; that if the meter reads 65 m. p. h. it is properly calibrated; that this procedure of testing was followed by the officers on the evening in question, shortly prior to 9:10 p. m., and about 6:00 p. m.; that on each occasion the meter read 65 m. p. h.; that no other tests were made; and that the tuning fork which was used, came with the radar unit.

Officer Markham further testified that the radar unit was made by the Reynaldi Company, which conducted indoctrination and training classes for police officers to familiarize them with its operation; that he attended such classes, as well as a one-day familiarization session given by the Lombard Police Department in 1967; that the engine of his automobile was idling at the time, but he had been instructed that this would not interfere with the correct operation of the radar; that the unit, for proper operation, should be located on a straightaway; that a steep hill would limit the range of the unit, but there would be an indication on the meter as to speed within a given area as the vehicle

approached; that in case of a slight hill, as in this instance, there is a slight deviation on the radar; that electrical and electronic devices can interfere with the correct operation of the radar; that the maximum range of this radar unit was between one-fourth and one-half mile; and that it was set at one-half of its maximum with its field being 200 to 300 feet.

Officer Thien testified, and his testimony was essentially the same as that of Officer Markham.

It is undisputed that the tuning fork, in question, was in the possession of Officer Markham, and that it had been tested, other than when manufactured, only when the radar unit was sent in to the company for its periodic test. The police officers never tested the tuning fork. The evidence was in conflict with reference to whether the defendant asked to see the radar meter and whether Officer Markham refused his request. Markham stated that no request was made and the defendant stated that such request was denied.

The defendant was accompanied by his wife at the time, and they were familiar with the streets of the area. Mrs. Stankovich testified that she was a speed-ometer watcher; that the speed of their car was under 55 m. p. h. at all times; and that this was the reading on the speedometer. She also said that her husband was "sort of surprised" when the officers in the police car motioned him to pull over; and that he did not state how fast he had been driving.

The defendant testified that he operated radar units in the navy, that radar can be affected by neon lights, high frequency transmitters, and spark-gap modulations from the spark plugs of an automobile, and he identified certain radio antenna, transmitting equipment and neon signs in the area from picture exhibits of area buildings. He further testified that he was driving 55 m. p. h. at the time in question; that he neither told the officers that he had been driving at a speed of

191

63 m. p. h., nor that the speed limit was 65 m. p. h.; and that he knew the speed limit was 55 m. p. h. He further stated that the spreading of the tines of a tuning fork, or the pushing of them together, will alter the vibrations of the fork.

The threshold question in this case is whether there was sufficient foundation for the introduction of the radar evidence of speeding. In People v. Barbic, 105 Ill App2d 360, 367, 244 NE2d 626 (1969), in considering this question, we quoted from People v. Abdallah, 82 Ill App2d 312, 226 NE2d 408 (1967), at page 315:

> "The 'radar' device presently in common use by law enforcement agencies for the determination of speeds of moving vehicles, . . . operates on the Doppler principle, that is, the emission of a continuous electromagnetic wave which enables the speed of a target object to be determined by measuring the difference in frequency between the wave emitted from the radar device and the wave reflected from the object. Kooper, The Scientific Reliability of Radar Speedometers, 33 NCL Rev 343. It is presently so well settled that the Doppler principle is an accurate means of determining the speed of a moving object that a court may take judicial notice thereof; and expert testimony is unnecessary to establish the usefulness of the method. (Citations.)"

Following this quotation, we stated:

> "This court also takes judicial notice of the accuracy of such radar devices generally in determining the speed of a moving object, subject to the necessary proof as to the accuracy and proper operation of the particular device under consideration."

In People v. Abdallah, supra, 316, 317, the court considered the questions of whether an officer is qualified

to testify relative to the accuracy of a radar unit where the tuning fork used to test its accuracy has not been tested by the officer operating the unit; and whether an officer who operates such unit is qualified to do so where he has little or no knowledge of the scientific principles involved in its operation. It stated:

"Defendant maintains that the tuning fork used to test the accuracy of the radar device was itself untested for accuracy and that therefore the operator was not qualified to testify to the accuracy of the device. We disagree. The officer testified that he made several tests with the tuning fork prior and subsequent to the time defendant passed into the radar field, and that the meter on each occasion showed a reading of 65 miles per hour. The officer further testified that it was his opinion the radar unit was working properly, that there was no outside interference which could have influenced the reading, and that only defendant's automobile was within the zone of the radar beam at the time the meter showed a reading of 79 miles per hour. The officer had been instructed in the operation of the radar device and had five and one-half years on-the-job experience in its use. We are of the opinion that there was sufficient proof of the accuracy of the radar unit for the trier of fact to find defendant guilty of speeding based solely upon the reading taken from the radar unit.

"Defendant maintains that the arresting officer was 'wholly unqualified to operate any radar set under any circumstances,' because he had no knowledge of the scientific principles involved in the operation of a radar instrument, had no knowledge of the frequency or power output of the instrument, and had no knowledge of the scope of the radar beam, and the like. The operator of a radar instrument

does not have to be an expert in the science or theory underlying the functions of the instrument. It is sufficient that he is familiar with the device and its operation, the evidence of which presents a question of weight and credibility for the jury."

■ Under the circumstances of this case, we believe that there was sufficient foundation for the introduction of the radar evidence of speeding. The testimony was adequate, if believed, to establish the qualifications of officer Markham as an operator of the unit, and the accuracy of the device. People v. Cash, 103 Ill App2d 20, 22, 242 NE2d 765 (1968).

The very least that can be said of the evidence of the State is that it presented an issue of fact as to the proper operation and the accuracy of the radar unit. It was properly warmed up before being placed in operation. It was twice tested by the tuning fork which was sold as an integral part of the radar unit for use in testing the unit; one of such tests was made shortly before the defendant's car entered into the radar field and the other was made about three hours prior to that time; and on the occasion of each test, the radar meter showed a reading of 65 m. p. h.

We are also of the opinion that there was sufficient proof of the accuracy of the radar unit and of its proper operation for the trier of the fact to find the defendant guilty of speeding upon the reading taken from the unit.

■ The trial court was the trier of the fact issue in this case. He saw the witnesses, heard them testify and had the opportunity of determining their credibility, not only from their testimony, but also from their general demeanor on the witness stand, the inflection of their voices and from other emotional and physical reactions to questions propounded, to an extent not available to this court from an examination of the cold

written record. It was his prerogative to believe or disbelieve the witnesses and to weigh their testimony.

■ In this case, the substantial testimony was that the radar device was accurate, although there was a possibility of error in its accuracy; and that it was being operated properly by a qualified police officer. Where the evidence is merely conflicting, a reviewing court will not substitute its judgment for that of the trier of fact. People v. Clark, 30 Ill2d 216, 219, 195 NE2d 631 (1964); People v. Barbic, supra, 370, 371.

■ ■ Reviewing courts in Illinois will not reverse a judgment of conviction on the ground that the evidence failed to sustain the judgment unless there is a reasonable and well-founded doubt as to the guilt of the accused and the judgment is palpably contrary to the weight of the evidence. People v. Lobb, 17 Ill2d 287, 294, 161 NE2d 325 (1959); People v. Prohaska, 8 Ill2d 579, 589, 134 NE2d 799 (1956); People v. Stangeland, 76 Ill App2d 77, 80, 220 NE2d 748 (1966); People v. Booher, 73 Ill App2d 226, 229, 230, 218 NE2d 779 (1966). Such doubt does not exist in the case at bar. Consequently, the judgment of the trial court is affirmed.

Judgment affirmed.

MORAN, P. J. and ABRAHAMSON, J., concur.