118 N.J. Super. 576 (1972)
289 A.2d 281
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MARTIN SCHMIEDE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Somerset County Court.
Decided March 29, 1972.
*577 Mr. David Linett, Assistant Prosecutor, for the State of New Jersey (Mr. Michael R. Imbriani, Prosecutor of Somerset County, attorneys).
Mr. Thomas E. O'Gorman, for defendant (Messrs. O'Gorman and McMann, attorneys).
MEREDITH, J.C.C.
This is an appeal by way of trial de novo of a conviction of defendant Martin Schmiede for violation of N.J.S.A. 39:4-98 in the Bedminster Township Municipal Court. He was charged by a state trooper with driving at an average speed of 72 miles an hour on Interstate Highway 78 in Bedminster Township, a 60-mile an hour zone, on September 10, 1971 at about 3 P.M. A state trooper testified that he had clocked defendant over a 4.8-mile course at an average speed of 72.7 miles an hour by the use of an electronic device known as Vascar.
The questions presented are whether the Vascar unit is a scientifically accurate instrument; whether the state trooper *578 as an operator of that unit was adequately trained in its use, and whether the use of the device by the state trooper on this particular occasion was proper.
The State presented the testimony of the program manager for Vascar, which is manufactured by the Federal Sign and Signal Corporation. Defendant presented no expert witness. The court determined that the witness was qualified to testify with respect to the scientific basis for the operation of the Vascar unit. The expert testified that Vascar is a special purpose electronic digital computer set to accept increments of distance and time, computing the average speed to the nearest tenth of a mile an hour. Its principle is based upon the accepted formula that speed equals distance divided by time. It consists of three modules: the odometer module, which works directly into the transmission and is turned on by the speedometer cable activator; the control module, which is the control center operation for the Vascar operator, and a computer module, which is placed on the inside of the vehicle. Its power is obtained from the car battery.
The control module contains two switches, one for measuring distance and one for measuring time. The odometer module is geared to measure 6,000 pulses a mile, or one pulse for every 10.56 inches of roadway travel. When the distance is measured in this manner the distance can be locked into the device to await the time interval. The time interval is measured by switching the time switch on and off, and the time is computed by an oscillator which has a fixed rate of 170.7 cycles a second. Once the distance and time factor are fed into the computer module, an automatic reading to the tenth of a mile is flashed on the control module which will signify the average speed of the vehicle clocked over the distance traversed. The maximum distance that the unit will store is approximately 5 1/2 miles and the maximum time is 6 1/2 minutes.
The unit has an adjustment of the time factor by way of a screw on the control module which is used to calibrate the *579 instrument. The calibration is done by clocking in a fixed distance and a fixed time. Other than a changing of tires which would affect the reading, the calibration would not change more than 2/10ths of a mile an hour in a six-month period. Changing of tires requires calibration.
The Vascar device is used by determining two fixed points and measuring the time and distance between these points to ascertain the average rate of speed. The input may be either the clocking of the time first or the measuring of the distance first. In order to obtain an accurate setting of the unit on the target points, usually the shadow from a bridge or overpass is used to overcome problems of depth perception. The expert testified that in the event there was a ten-foot error on the reference point at a car traveling 70 miles an hour for a clock of one mile, the error in the resulting reading would be only .133 miles an hour. In the event of a 100-foot error on the reference point at a car traveling 70 miles an hour for a clock of one mile, the error in the resulting reading would be 1.326 miles an hour. The greater the distance used in the clocking of the speeding vehicle, the greater the accuracy obtained.
The instrument has a built in warning device. In the event that the instrument is not properly warmed up or there is insufficient power from the battery source or any other malfunction, the reading obtained will be 00.1 Thus, the operator is alerted to any possible malfunction of the instrument.
For the training for the operation of the Vascar unit it is recommended by the manufacturer that a half-day of classroom work be given to the trainee involving the theory and operation of the Vascar unit, and that the trainee then be given a month to practice in the use of the unit, at the end of which time a test of 30 clockings under different situations is administered. In that test the trainee, in order to be qualified, must not have a single error greater than two miles an hour and must have an average error of no more *580 than .75 miles an hour. Of the 6,000 certified tests throughout the United States approximately one year ago, the national average was found to be .416 miles an hour error.
The Vascar device had its first use by the State Police of the State of Indiana in 1966. As of the present date, there are 6,500 units in use throughout the United States. The Court has found no reported cases in the State of New Jersey and only one reported case elsewhere determining the scientific validity of the Vascar device. In People of State of New York v. Persons, 60 Misc.2d 803, 303 N.Y.S.2d 728 (Court of Special Sessions, 1969), decided by a County Court Judge of that State, the Court after hearing the scientific testimony, upheld the scientific accuracy of the Vascar device and upheld the conviction based thereon. In an unreported decision in the State of New Jersey v. Salvatore Profaci, decided by Judge John E. Bachman of the Middlesex County District Court, Judge Bachman, without any evidence regarding the scientific accuracy of Vascar and with testimony of inadequate training of the Vascar operator, reversed the conviction in municipal court. Based on the testimony of the State's expert, this Court is of the opinion that the Vascar device is essentially a simple computer type calculator which scientifically measures speed through the measurement of time and distance based upon the formula of speed equals distance divided by time. Its accuracy is qualified only by its proper calibration, the proper training of an operator and the proper operation in the particular case.
This, then, leads to the second question of whether the trooper involved in the instant case received the proper training. The trooper testified that he was given a full day's training by another trooper who had previously been qualified as an operator and instructor on Vascar, and that this was followed by a one-month use of Vascar by the trooper on many occasions. At the end of the one-month period, the qualified trooper administered a series of 30 tests to the *581 training trooper. These tests involved five separate clockings each of meeting a target vehicle, of approaching the target vehicle from the rear, of following a target vehicle, on a parked, premeasured distance, on a T-intersection with no premeasured distance, and during the night hours. Of these tests, 7/10ths of a mile was the greatest deviation and the average deviation was .229 miles an hour  well below the national average and well below the standard of deviation of not in excess of .75 miles an hour. Having passed the test, the state trooper was certified as an operator of Vascar. In addition, the complaining trooper used the Vascar unit continuously on routine patrol for nine months prior to the instance with this particular motorist on September 10, 1971. Furthermore, the court went out on the road with the trooper where he demonstrated Vascar's use and calibration and demonstrated his complete familiarity with the unit.
Therefore, the court finds that the complaining trooper in this case was fully qualified in the use and operation of the Vascar device.
The final question presented is whether the complaining state trooper properly operated the Vascar unit on the day in question. He testified that on the morning of that day he calibrated the Vascar unit by running the car over a premeasured half-mile measured by the State Bureau of Weights and Measures on Interstate Highway 287. Once this distance had been put into the Vascar unit, from a stop watch previously checked by radio time, he clocked 30 seconds into the time bank in the Vascar unit and obtained a reading of 60.0 miles an hour. He then erased the time factor and put in 20 seconds which, when computed together with the half-mile, gave a reading of 90 miles an hour. Both tests indicated that the Vascar unit was properly calibrated.
He testified that at 3 P.M. on that date he was parked alongside of Interstate Highway 78 when he noticed defendant's car proceeding in a fast manner. When that car hit the shadow of an overpass which was in his view, he set the *582 time switch in motion. He then proceeded to the same overpass and as he passed the shadow put in motion the distance switch. Although he lost sight of the car during some of the period, the trooper caught up with him and as it passed the shadow of another overpass he turned off the time switch, and as he went under the shadow of the same overpass he also turned off the distance switch. As a result thereof, he received a reading of 72.7 miles an hour. The trooper testified that the distance between the first overpass and the final overpass was 4.8 miles.
Although there was some question raised with respect to whether the state trooper had the proper identification of the car, this court is fully satisfied that the trooper clocked the same car.
Therefore, the court is of the opinion that the Vascar unit was properly calibrated and thus accurate, and that the complaining state trooper properly operated that unit in determining defendant's speed.
The court concludes that the State has proved defendant guilty beyond a reasonable doubt of speeding at 72 miles an hour in a 60-mile an hour zone, and the conviction below is affirmed.