THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD R. DONOHOO, Defendant-Appellant.

Fifth District   No. 75-443

Opinion filed October 21, 1977.—Rehearing denied November 28, 1977.

L. Thomas Lakin, of East Alton, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Bruce D. Irish and Martin N. Ashley, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant, Richard Donohoo, was charged in the Circuit Court of Madison County with operating a motor vehicle at a speed of 70 miles per hour in a 55-mile-per-hour speed zone as determined by a device known as a speed gun. The trial court found the defendant guilty and set his fine at $15 plus court costs.

At trial, the defendant maintained that the State had the burden of demonstrating that a speed gun was in fact a radar device and that it was an accurate means of recording speeds of moving objects. The State had this burden, the defendant argued, because no Illinois court had yet judicially noticed the usefulness and accuracy of speed guns. The State presented evidence of the reliability and accuracy of speed guns through the testimony of Otis Baker, communications supervisor for the Illinois State Police. In comparing the speed gun to the more common radar speed meter, Baker testified that both types of speed measuring devices employed the Doppler effect,[1] the scientific principle underlying the operation of radar devices. Baker stated that both types of speed measuring devices have the same radar projection units and that the handheld speed gun differed only in the respect that the measured speed is indicated as a digital readout on the device, whereas the conventional radar unit indicates the measured speed on a meter or on a graph on the radar installation in the police car. Baker further testified that as with the conventional radar meter, the accuracy of a speed gun is tested by the use of a calibrated tuning fork, certified to be correct every six months by laboratory equipment in Springfield.

---

[1] The "Doppler effect," which is the basis of police radar devices, is familarly experienced when driving past an automobile whose horn is sounding, the pitch of the sound falling suddenly just as the vehicle is passed. The radar devices used by police employ this principle by sending out a continuous beam of microwaves at a fixed frequency, the operation depending on the physical law that when such waves are intercepted by a moving object, the frequency changes in such a ratio to the speed of the intercepted object that by measuring the change of frequency, the speed may be determined. For an exhaustive analysis of the admissibility and sufficiency of automobile speed detection through use of radar, see Annot., 47 A.L.R. 3d 822 (1973).

The arresting officer, Trooper File, also appeared for the State and testified that a tuning fork test he had conducted shortly before he ticketed the defendant showed the speed gun to be accurate and in proper working order. Trooper File's experience with the operation of the speed gun consisted of personal instruction by a police supervisor in the operation of the unit, his reading the device's operating manual and several months use of the speed gun. File testified that when he aimed the speed gun at the defendant's automobile it registered a speed of 70 m.p.h. and that he subsequently stopped and ticketed the defendant.

Defendant maintains on this appeal that the trial court erred in both allowing Otis Baker's testimony regarding the operation and accuracy of the speed gun where it was not established that he was properly qualified to do so, and in finding that the speed gun was, in fact, the same as radar. Defendant also contends that it was not sufficiently established that the arresting officer was capable and qualified in the operation of the speed gun.

At present, there are no reported cases in this State involving the use of speed guns. It is well settled, however, that the accuracy and reliability of the Doppler principle employed by radar speed meters is judicially noticeable subject to necessary proof of the accuracy and proper operation of the particular radar device under consideration. *People v. Cash*, 103 Ill. App. 2d 20, 242 N.E.2d 765 (5th Dist. 1968); *People v. Abdallah*, 82 Ill. App. 2d 312, 226 N.E.2d 408 (1st Dist. 1967).

■■ The reliability of the Doppler principle is not questioned by the defendant nor does he dispute the fact that a speed gun employs this principle; instead he contends that expert testimony is necessary to support the scientific accuracy of a speed gun in a case of first impression. The defendant urges that just as the scientific facts and principles underlying the operation of VASCAR have required proof in case of first impression (*State v. Schmiede*, 118 N.J. Super. 576, 289 A.2d 281 (1972)), so should the speed gun's reliability as a speed measuring device be initially proved by expert testimony.

We do not agree with the defendant that comparable proof should be required in the instant case. Unlike the speed gun, VASCAR does not employ the Doppler principle nor is it a radar device; it is instead an optical-mechanical system which requires an operator to trigger a timing switch in order to measure the elapsed time in which the target vehicle travels a determined distance. See *State v. Finkle*, 128 N.J. Super, 199, 310 A.2d 733 (1974).

■■ The defendant also argues that a speed gun differs from the more conventional radar speed meter in that a speed gun's accuracy is dependent upon its internal electronic circuitry properly functioning in order to convert the radar impulses into a digital readout. However, as communications supervisor Baker testified, conventional radar speed

meters also contain internal components designed to transform the radar impulses into discernible images on a graph or chart. The reading on the graph or chart is an indication of the accuracy of both the unit and its internal circuitry, therefore, a test or some evidence of its accuracy is required to prove that the ultimate reading given by the unit accurately reflects the speed of the vehicle measured. The proof of the accuracy of a radar device and its internal components has neither involved judicial notice nor scientific testimony, rather, it has been treated as an issue of fact to be proved in a typical case by testimony that the unit performed properly when tested with a tuning fork. *People v. Abdallah*, 82 Ill. App. 2d 312, 226 N.E.2d 408 (1st Dist. 1967).

We fail to find any significant difference between a speed gun and a conventional radar speed meter that would necessitate expert testimony concerning the reliability of a speed gun as a speed measuring device. Accordingly, we find the defendant's contention to be a distinction without a difference and without merit. What must be proved in order to convict a defendant in a speeding case is the accuracy of the particular unit used, be it a speed gun or a conventional radar speed meter.

■■ We are also of the opinion that Trooper File, the arresting officer, was sufficiently qualified in the operation of a speed gun. He testified that he had read the device's operating manual, that he had received personal instruction in the operation of the unit by a police supervisor and that he had several months experience operating the speed gun. The testimony was adequate to establish the qualifications of Trooper File as an operator of the speed gun. It is sufficient that an operator of a radar instrument be familiar with the device and its operation, the evidence of which presents a question of weight and credibility. *People v. Stankovich*, 119 Ill. App. 2d 187, 255 N.E.2d 187 (2d Dist. 1970); *People v. Cash*, 103 Ill. App. 2d 20, 242 N.E.2d 765 (5th Dist. 1968).

■■ Hence, the accuracy of a radar speed gun is qualified only by its proper calibration, the proper training of its operator and its proper operation in a particular instance. Finding that these factors were sufficiently proved in the instant case, we accordingly affirm the judgment of the Circuit Court of Madison County.

Affirmed.

JONES and G. J. MORAN, JJ., concur.