THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
NAOMI F. WILSON, Defendant-Appellant.

Third District   No. 80-297

Opinion filed June 29, 1981.

C. Don Weston, of Macomb, for appellant.

Warren T. McNeill, State's Attorney, of Monmouth, for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:
Defendant Naomi Wilson was charged with a speeding violation on a highway in Warren County, Illinois, on May 14, 1979, when she was clocked traveling 66.18 miles per hour in a 55-mile-per-hour zone by two

police officers engaged in air traffic patrol. Following a jury trial, defendant was found guilty and was fined $35.

According to the record before us, defendant's 1972 Chrysler Imperial automobile was timed by the two traffic officers from overhead as the automobile crossed a 660-foot long zone marked by 18 inch wide white lines at either end. One officer timed defendant at 6.74 seconds, and the other timed her at 6.80 seconds, with both of them using electronic digital stopwatches. The time clocked by the officers is the equivalent of a speed of 66.18 miles per hour. The officers in the airplane radioed to Officer Glenn R. Quigley on the ground that the next vehicle approaching him had been clocked at 66.18 miles per hour. They saw Quigley stop defendant and verified by radio that he had stopped the correct unit. Quigley issued defendant the traffic ticket which served as the complaint in her subsequent trial.

The two officers who had been in the airplane testified that the stopwatches they were using that day had been calibrated for accuracy on March 27, 1979, about six weeks before defendant's arrest, and again on May 25, 1979, about two weeks after the arrest. A certificate of calibration for each watch was introduced into evidence by stipulation. Defendant made a motion to strike the testimony of the two airborne officers on the ground that a proper foundation for the admission of the air speed check data had not been laid. The motion was denied.

After some testimony relating to weather conditions, defendant testified in her own behalf that she had not exceeded the 55-mile-per hour speed limit that day and that just before she was stopped, she had passed a large semi that was going only 35 miles per hour. During defendant's testimony the prosecutor made several objections to the narrative form of her testimony. The trial court sustained the objections and instructed defendant and her counsel to proceed using questions and answers.

The jury found defendant guilty, and she has perfected this appeal.

Defendant argues that the State should not have been allowed to introduce the evidence of the speed at which she was clocked because the foundation for the admission of such evidence was insufficient. Defendant claims that the same sort of foundation should be required for stopwatch-timing evidence as is required for admission of radar speed evidence. (See R. Hunter, Trial Handbook for Illinois Lawyers §59:10 (4th ed. 1972).) Missing here, she claims, was evidence that the watches were operating properly as shown by a test against a car with a known accurately calibrated speedometer immediately before and after the patrol period such as is required to validate the accuracy of a radar device.

Although defendant contends that the evidence of speed was improperly admitted, we note Illinois courts have taken judicial notice of the

accuracy of radar devices generally in determining the speed of moving objects, and have stated:

> "Where the accuracy of a particular radar device is unproven, the results thereof will be insufficient to convict for a traffic violation, although such results are admissible as evidence. [Citation.] Where, on the other hand, there is reasonable and sufficient proof of the accuracy of the radar instrument, the reading taken therefrom may of itself be sufficient for a conviction." *People v. Abdallah* (1967), 82 Ill. App. 2d 312, 316, 226 N.E.2d 408, 410; *People v. Barbic* (1969), 105 Ill. App. 2d 360, 368, 244 N.E.2d 626, 630.

■■ Similarly, we believe that timing a moving car from overhead with a stopwatch as the car traverses a measured distance is generally an accurate method of determining speed. In fact, we believe it unlikely that two approved watches could be appreciably inaccurate during the use in question when both watches tested properly within reasonable time frames before and after the event. As such, we conclude that the evidence of speed was properly admitted in the case at bar.

■■ The next question is whether that evidence was sufficient to convict defendant of a speeding violation, in view of the foundation evidence offered by the State to establish the accuracy of the particular stopwatches used here. We note that the State presented evidence of the training and experience of the two officers who used the stopwatches in the airplane over the speed zone, and defendant does not question the competency of the officers. We are persuaded that the evidence of speed in this case was sufficient to support defendant's conviction. Although the tests for accuracy of the stopwatches were not performed immediately before or after the arrest, such immediate tests of speed recording devices are not always necessary. In *Village of Schaumburg v. Pedersen* (1978), 60 Ill. App. 3d 630, 377 N.E.2d 252, it was held that the accuracy of the speedometer of a police car was sufficiently proven where the speedometer had been calibrated at some undisclosed time after the arrest, and defendant presented no contradictory evidence. In other words, if *some* evidence of accuracy is presented, an issue of fact is created, and it is the duty of the trier of fact to weigh the evidence. Here we find there was sufficient evidence of the accuracy of the two stopwatches to create an issue of fact for the jury, even in the face of defendant's testimony that she did not exceed the speed limit. In addition to the certificates of calibration, we have the important fact that two watches used by two experienced operators timed defendant at virtually the same speed. Confronted with such evidence, we will not substitute our judgment for that of the trier of fact.

■■ Finally, defendant also claims that the trial court improperly sustained the State's objections to her narrative testimony and forced her to

resort to a formal question and answer presentation, thereby denying her "fundamental fairness." This matter of trial proceeding was considered in *People v. Dickman* (1969), 117 Ill. App. 2d 436, 439, 253 N.E.2d 546, 547-48, where the court observed:

> "Normally, evidence is introduced by question and specific response. This method of interrogation tends to keep the testimony of the witness within the rules of evidence and affords greater opportunity for opposing counsel to object to inadmissible testimony before it is actually given. * * *. The trial court has the discretion to permit the narrative form of testimony * * *."

We have carefully reviewed the report of proceedings and conclude that the trial court did not abuse its discretion in requiring defendant to limit her testimony to what was factual and relevant by means of questions from her counsel and answers responsive to those questions.

We accordingly affirm the conviction.

Affirmed.

SCOTT, P. J., and HEIPLE, J., concur.