2022 IL App (2d) 210290-U
No. 2-21-0290
Order filed March 8, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-TR-40051 |
| NICHOLAS PAUL FITZ, | ) ) ) | Honorable Margaret M. O'Connell, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Birkett concurred in the judgment.

**ORDER**

¶ 1   *Held*:  Defendant was proved guilty beyond a reasonable doubt of speeding. His argument that the sheriff deputy's radar unit was not properly calibrated was based on a misreading of a statute. His contention that the deputy stopped the wrong vehicle was not supported by the evidence as construed in the light most favorable to the prosecution.

¶ 2   Defendant, Nicholas Paul Fitz, appeals the judgment of the circuit court of Du Page County finding him guilty of speeding (625 ILCS 5/11-601(b) (West 2020)). He contends that he was not proved guilty beyond a reasonable doubt. Because there was sufficient evidence to prove defendant guilty of speeding, we affirm.

¶ 3                                     I. BACKGROUND

¶ 4     Defendant was charged by traffic citation and complaint with speeding, improper lane usage (625 ILCS 5/11-709(a) (West 2020)), and operating a motor vehicle with license plate covers (625 ILCS 5/3-413(g) (West 2020)). He opted for a bench trial.

¶ 5     The following facts are taken from the bystander's report. See Ill. S. Ct. R. 323 (eff. July 1, 2017). At about 7:17 p.m. on August 23, 2020, Deputy Z. Gentle of the Du Page County Sheriff's Department was in a parked squad car facing east at the intersection of Goodrich Avenue and North Avenue in Glen Ellyn.

¶ 6     According to Deputy Gentle, he was properly trained to use a handheld radar device. At the beginning of his shift, he calibrated the radar by " 'pressing a button.' " When he pointed the radar at a tuning fork, it showed a speed of 77 miles per hour, which confirmed that the radar was functioning properly. According to Deputy Gentle, the radar was working. " 'just fine' " that day. He did not, however, test the radar after he stopped defendant or at the end of his shift.

¶ 7     At about 7:17 p.m., Deputy Gentle observed a vehicle that appeared to be driving over the posted speed limit of 45 miles per hour. After refreshing his recollection in court by looking at the traffic citation, he testified that the vehicle was a black Land Rover. He activated his radar, which indicated that the vehicle was traveling 68 miles per hour.

¶ 8     Because the traffic was heavy, Deputy Gentle had to wait to enter the roadway to stop the vehicle. Because of the delay, he lost sight of the vehicle for approximately 2.7 miles. He eventually stopped the vehicle. Defendant was driving, and there was a young girl in the front passenger seat and a small child in the back seat. Deputy Gentle issued traffic citations for speeding, improper lane usage, and operating a motor vehicle with license plate covers.

¶ 9       On cross-examination, Deputy Gentle admitted that he did not know the make or model of the radar unit. The trial court took judicial notice of two documents from the sheriff's office showing that the radar unit was last calibrated and certified on September 13, 2002. When asked if the radar had been calibrated and certified since 2002, Deputy Gentle responded that he did not know because he did not perform such tests; that task fell to someone else within the sheriff's office. Deputy Gentle reiterated that he had lost sight of the vehicle because he had to wait for traffic before entering the road.

¶ 10      The traffic citations issued by Deputy Gentle described the vehicle as a black "LandRover [*sic*] Range Rover."

¶ 11      The trial court granted defendant's motion for a directed finding as to the license-plate charge.

¶ 12      Defendant testified that, at about 7:15 p.m. on August 23, 2020, he was driving westbound on North Avenue. Defendant saw Deputy Gentle back his squad car into the bushes at Goodrich and North Avenues. According to defendant, the speed limit in that area was 40 or 45 miles per hour, and he was not exceeding that limit. He claimed that, because of the heavy traffic, it would have been "impossible" for him to speed.

¶ 13      Defendant was driving from Chicago and had his two young daughters in the vehicle. He drove primarily in the right lane but occasionally switched lanes, using his turn signal. According to defendant, it would have been "impossible" for him to violate the rules of the road, because he would not have risked his daughters' lives.

¶ 14      Defendant was driving a 2009 black Range Rover. While driving, he saw two other black Range Rovers with the same 2006-2012 body style driving in the same direction as him. He was surprised when he was pulled over. He denied that he was speeding.

¶ 15    The trial court found defendant not guilty of improper lane usage but guilty of speeding. The court determined that, based on Deputy Gentle's tuning fork test, the radar was working properly when he measured defendant's speed. The court found that Deputy Gentle testified credibly regarding the sheriff's office inspection of the radar and that, "despite the outdated calibration and certification certificates, the radar was up to date." The court further found that, despite losing sight of the vehicle, Deputy Gentle was able to catch the vehicle that he believed had been speeding. The court also found that "Land Rover and Range Rover are the same make and model as both insignias appear on the vehicle." Defendant filed a timely notice of appeal.

¶ 16                                      II. ANALYSIS

¶ 17    On appeal, defendant contends that he was not proved guilty beyond a reasonable doubt of speeding because (1) the radar had not been properly calibrated, certified, and tested, and (2) Deputy Gentle stopped the wrong vehicle.

¶ 18    The test on appeal for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Lloyd*, 2013 IL 113510, ¶ 42. The trier of fact is best equipped to judge the credibility of the witnesses. *People v. Wheeler*, 226 Ill. 2d 92, 114-15 (2007). Thus, the trier of fact's credibility findings are entitled to great weight. *Wheeler*, 226 Ill. 2d at 115. The testimony of a single witness, if credible, is sufficient to convict. *People v. Kiertowicz*, 2013 IL App (1st) 123271, ¶ 19. We will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of the defendant's guilt. *People v. Collins*, 214 Ill. 2d 206, 217 (2005).

¶ 19    Section 11-601(b) of the Illinois Vehicle Code (Code) provides that no person may drive a vehicle at a speed greater than the statutory limit. 625 ILCS 5/11-601(b) (West 2020). Defendant

asserts that he was not proved guilty of violating section 11-601(b) because the radar was not properly certified and calibrated. He maintains that, under section 11-208.3 of the Code (625 ILCS 5/11-208.3 (West 2020)), the radar was required to be annually calibrated and certified. He also contends that Deputy Gentle was required to test the radar with a tuning fork both before and after the stop.

¶ 20    Although defendant points to language in section 11-208.3(b)(3) that states that radar equipment shall be internally validated no less than once a week and that such equipment shall be tested for accuracy by a qualified technician, he takes that language out of context. Section 11-208.3's heading refers, in part, to "automated speed enforcement system violations."625 ILCS 5/11-208.3 (West 2020). More importantly, the language relied on by defendant in section 11-208.3(b)(3) is preceded by language that states that "[r]outine and independent calibration of the speeds produced by automated speed enforcement systems and equipment shall be conducted annually by a qualified technician."625 ILCS 5/11-208.3(b)(3) (West 2020). That section further provides that speeds produced by automated systems shall be compared with speeds produced by lidar or radar systems and that the lidar or radar testing equipment shall undergo an internal validation no less than once per week.625 ILCS 5/11-208.3(b)(3) (West 2020). A plain reading of section 11-208.3(b)(3) clearly shows that it applies only to automated speed enforcement systems. It does not apply to the manual use of radar by law enforcement. Defendant's reliance on the language regarding radar calibration and testing is misplaced. Thus, the fact that the radar used by Deputy Gentle failed to comply with section 11-208.3 does not undercut the sufficiency of the evidence that defendant was speeding.

¶ 21    Nor did Deputy Gentle's failure to test the radar after the stop render the radar reading insufficient to prove defendant guilty beyond a reasonable doubt. The cases that defendant relies

on do not require such post-stop testing. In *People v. Burch*, 19 Ill. App. 3d 360, 361 (1974), *People v. Barbic*, 105 Ill. App. 2d 360, 362 (1969), and *People v. Abdallah*, 82 Ill. App. 2d 312, 314 (1967), there was evidence that the arresting officer had tested the radar with a tuning fork or other device both before and after the stop. See *Village of Algonquin v. Sato*, 2018 IL App (2d) 170089, ¶¶ 18-23 (discussing Illinois cases approving radar testing by tuning fork). However, none of those cases held that testing both before and after using the radar was required. Indeed, in *People v. Donohoo*, 54 Ill. App. 3d 375, 377 (1977), the court held that a single tuning fork test shortly before the stop was sufficient to show that the radar was working properly. Similarly, the court in *People v. Stankovich*, 119 Ill. App. 2d 187, 190-92 (1970), held that a single tuning fork test twice before the stop was adequate to show that radar was working reliably. There is no Illinois authority holding that, where the State seeks to establish the accuracy of radar through tuning-fork testing, the State must show that the radar was tested by tuning fork both before and after the stop. Thus, the radar reading here of 68 miles per hour was sufficient to prove that defendant was violating section 11-601(b) of the Code.

¶ 22    Not only did the radar show that defendant was speeding, but Deputy Gentle observed defendant's vehicle traveling at a speed that appeared to be over the posted limit. That observation bolstered the radar reading and provided further evidence of defendant's guilt.

¶ 23    Lastly, we address defendant's assertion that Deputy Gentle stopped the wrong vehicle. Although defendant makes much of Deputy Gentle's testimony that defendant was driving a Land Rover, as opposed to a Range Rover, such an inaccuracy did not significantly undercut Deputy Gentle's testimony. Deputy Gentle could recall the make and model of the vehicle only after looking at the traffic citation. The traffic citation, however, stated that the vehicle was a "LandRover [*sic*] Range Rover." Thus, it was understandable that Deputy Gentle referred to it as

a Land Rover. Further, Deputy Gentle described the vehicle as black, which is the same color as defendant's vehicle. Although it took Deputy Gentle 2.7 miles to stop the vehicle, during which time Deputy Gentle lost sight of the vehicle, there is nothing to show that Deputy Gentle lacked an adequate opportunity initially to observe the vehicle or that he forgot what it looked like before he executed the stop.

¶ 24 We recognize that defendant denied that he was speeding and further testified that there were two other vehicles similar to his on the roadway. However, the trial court was in the best position to assess the credibility of the witnesses. *Wheeler*, 226 Ill. 2d at 114-15. Moreover, the fact that there were other vehicles on the roadway similar to defendant's did not, without more, show that Deputy Gentle somehow stopped the wrong vehicle.

¶ 25 Based on the foregoing, we conclude that the evidence, when viewed in the light most favorable to the prosecution, proved beyond a reasonable doubt that defendant was guilty of speeding in violation of section 11-601(b) of the Code.

¶ 26                                III. CONCLUSION

¶ 27 For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 28 Affirmed.