**People of the State of Illinois, Appellee, v. Henry Perlman, Appellant.**

**Gen. No. 47,176.**

First District, First Division.

October 21, 1957.

Released for publication December 5, 1957.

240

Robert L. Tarrell, of Chicago (Henry Perlman, of counsel) for appellant.

Benjamin S. Adamowski, State's Attorney, of Cook county (L. Louis Karton, and William L. Carlin, Assistant State's Attorneys, of counsel) for appellee.

PER CURIAM.

Defendant, Henry Perlman, was convicted in the Municipal Court of Chicago on two charges, contained in separate informations, one charging him with violation of section 49, the other with a violation of section 103, of the Uniform Act Regulating Traffic on Highways for the State of Illinois. The cases were consolidated and tried at the same time by the court without a jury. The court found the defendant guilty on both charges and assessed fines totaling $13. The defendant takes this appeal from the judgments entered therein.

Cases of this character, which involve a violation of the Traffic Act, seldom, if ever, come before courts of review. Ordinarily the amount of the fine is small and the expense and time which would be consumed in an appeal is obviously too great a burden for the ordinary defendant. When such a case comes before a reviewing court the rules of law should be clearly enunciated for the guidance of the trial courts in deciding future cases which may come before them. The traffic court is an extremely important court. It is the only contact which a great majority of our citizens have with any court. Hence it is extremely important that the court's interpretation and application of the governing legal

241

principles and the procedure followed in the trial be painstakingly correct and accurate.

The defendant contends that there was not sufficient credible evidence to convict him under section 49 of driving at an excessive speed, and that there was a total lack of evidence to convict him under section 103 of driving a motor vehicle without lamps visible 500 feet in front of said vehicle.

On September 1, 1956, at approximately 11:15 p. m., the defendant was driving west on Peterson avenue, a public highway in the city of Chicago, when he was stopped by a police officer and given two traffic tickets. At the trial the officer testified that at the time in question he was traveling in an easterly direction on Peterson avenue in the vicinity of the 4100 block, where the posted speed limit was 35 miles an hour; that he observed a car being driven by the defendant in a westerly direction and believed that the defendant was driving faster than the posted speed limit; that he turned his vehicle around and followed the defendant's car for approximately two blocks, 4500 to 4700; that the posted speed limit changed to 30 miles an hour at the 4500 block; that he clocked defendant's rate of speed at 42 miles an hour; that at the time when he stopped defendant's car he noticed that the defendant had on his parking lights instead of his regular headlights. The officer further testified that traffic conditions were normal at the time and place in question, the weather was clear and there were about 8 to 10 cars going in each direction in an eight block area.

The defendant testified that he has been a member of the bar since 1922 and had served as a master in chancery of the Circuit Court; that at the time and place he was driving with his roadlights on instead of his headlights because he was previously informed that one of his headlights was burned out; that he was driving a Cadillac car and that on such car there were three

242

sets of lights: parking, roadlights and headlights; that at the time he was using the roadlights, which had a beam of 250 feet and were visible for a distance of two miles. The State introduced no evidence to contradict this testimony. The officer testified that in his opinion at the time and place in question the defendant was driving at a speed which placed his life, limb and property in danger.

Section 49 of the Uniform Act Regulating Traffic on Highways (par. 146, chap. 95½, Ill. Rev. Stat. 1955) provides:

"(a) No person shall drive a vehicle of the first division as described in Article 1 of this Act, upon any public highway in this State at a speed greater than is reasonable and proper having regard to the traffic and the use of the way or so as to endanger the life or limb or injure the property of any person. . . ."

Section 50 (par. 147) provides:

". . . whenever the local authorities in cities exceeding 500,000 in population shall determine upon the basis of an engineering and traffic investigation . . . said local authorities shall determine and declare a reasonable and safe prima facie speed limit thereat which shall be effective when appropriate signs giving notice thereof are erected at such intersection or other place or part of the street, but in no instance shall the speed exceed 45 miles per hour."

Section 103 (par. 200) provides:

"When upon any highway in this State, during the period from sunset to sunrise, every motorcycle shall carry one lighted lamp and every motor vehicle two lighted lamps showing white lights, or lights of a yellow or amber tint, visible at least five hundred (500) feet in the direction toward which each motorcycle or motor vehicle is proceeding . . . ."

We shall first consider the charge that the defendant was violating section 103 of the Uniform Act Regulat-

243

ing Traffic on the Highways. The information charged in the words of the statute that the defendant was driving the said vehicle after sunset and before sunrise without two lamps showing two white or amber lights visible 500 feet in front of said vehicle. The defendant testified that the lights he was using at the time had a visibility of two miles. This testimony was not contradicted in any way by any evidence put forward by the State. The State failed to prove the defendant guilty not only by evidence beyond a reasonable doubt but by any evidence at all. The judgment of the trial court finding defendant guilty on the information charging a violation of section 103 of the Uniform Act Regulating Traffic on Highways was in error.

We will next consider the charge against the defendant of violating section 49 of the Uniform Act Regulating Traffic on Highways; and while this Act has since been amended, the charge must be considered under the Act then in force as set out above.

The statute fixes no speed limits and only provides that a vehicle shall not be driven at a speed greater than is reasonable and proper having regard to the traffic and use of the highway or so as to endanger the life or limb or injure the property of any person. The statute also provides that driving in excess of certain posted speed limits is prima facie evidence of violation of the statute. The state has the duty in all cases involving a violation of a criminal law to prove the defendant guilty beyond a reasonable doubt. The provision in the statute which makes a violation of properly posted speed limits prima facie evidence of a crime is a rule of evidence and not one of substantive law. Morrison v. Flowers, 308 Ill. 189; Wallace v. Yellow Cab Co., 238 Ill. App. 283; City of Cleveland v. Keah, 105 N.E.2d 402 (Ohio); Commonwealth v. Cassidy, 95 N. E. 214 (Mass.); People v. Lloyd, 178 Ill. App. 66; People v. Sumwalt, 178 Ill.

App. 357; People v. Banat, 100 P.2d 374 (Calif.). Upon proof of driving at a speed in excess of the posted speed limits a rebuttable presumption is raised that the statute has been violated, and this presumption is sufficient to establish a prima facie case on the part of the State. The defendant may then introduce evidence to attack the basic fact upon which the presumption is based, that the defendant was driving at a speed in excess of the posted speed limits, or the defendant by his evidence may show that the conditions existing at the time and place of the arrest with reference to traffic, condition of the roadway, etc. were such that he would be taken out of the purview of the statute. The State throughout the case has the duty of proving beyond a reasonable doubt the defendant was driving at a speed in violation of the specific statutory provisions, and unless the State sustains that burden there should be a finding of not guilty. All that the presumption which is raised by a violation of the posted speed limit does is to create a prima facie case, and, standing alone and with no conflicting evidence, it would be sufficient to support a judgment. This presumption fails when the testimony of the State's witnesses is inconsistent with the presumption and in its very essence rebuts it.

In the case before us the police officer testified that the defendant was exceeding the posted speed limit of 30 miles an hour by driving at a rate of 42 miles an hour. On cross-examination, however, he stated that the traffic was normal; that while he did not notice exactly how much traffic there was in the eight blocks, normal traffic in the eight blocks involved would be eight to ten cars going in each direction; that the violation occurred at 11:15 p. m. on the Saturday night of the Labor Day weekend. He also stated that in his opinion, under the conditions of traffic, the manner and speed at which the defendant was driving

245

■■■■■■■■

endangered defendant's life, limb and property. This opinion of the officer is not substantiated by his testimony as to the existing facts and should have been disregarded.

■ The legislative intent underlying a statute of this character is that the court should determine upon all the evidence before it whether or not the State has proved a violation of the statute beyond a reasonable doubt. When there is evidence of the character such as appears in this record, in order to convict there must be some further showing on the part of the State, and the court is required to determine whether there has been a violation of the specific provisions of the statute regulating speed of motor vehicles, taking into consideration the speed at which the vehicle was driven, the time, place, condition of the roadway, amount of traffic, and all other conditions which might be material to the issue involved. On this charge on the record the State failed to sustain its burden of proof.

The record further shows that the defendant testified that some months prior to the occasion in question he had been stopped in the same locality by the same police officer and accused of driving in excess of the posted speed limit; that at that time the police officer said to him, after some discussion: "I see you are a member of the Policemen's Benevolent Association. Now, as far as I am concerned go ahead, but why don't you give me five dollars instead of them"; that he (defendant) then said: "I don't bribe cops." The defendant further testified that at the time when he was arrested in the instant case the officer first accused him of driving with parking lights instead of headlights and that when the officer recognized the defendant he then accused him of exceeding the posted speed limit. The trial court questioned the officer, who denied the charge and also denied that he had on any other occasion stopped the defendant for any violation, though he stated he might have seen him.

The police officer testified that when he was driving toward defendant in the 4100 block his attention was called to defendant's car because he then noticed the defendant was exceeding the posted speed limit which at that point was 35 miles per hour. The policeman, when asked by defendant how fast, he, the defendant, was going at the time, answered; "I was not able to—you looked like you were exceeding the speed limit, and when I got behind you, I clocked you for four blocks west." The officer testified that at that time the defendant was traveling 42 miles per hour. It is also to be taken into account that in the space of one mile or eight blocks on Peterson avenue, which is a broad public highway, there were only eight or nine cars traveling in each direction at the time. The difficulty of detecting the speed of cars traveling in an opposite direction makes the testimony of the officer that his attention was first called to defendant's vehicle because it was exceeding the speed limit improbable, as against the testimony of the defendant that the officer, when he stopped the defendant, at first charged him with driving without headlights and said nothing about speed.

In weighing the testimony the court should have also taken into account that it was defendant's word against the police officer's and that defendant is and has been a member of the bar for 35 years and had served as a master in chancery. His interest, aside from vindication and sense of public duty, was only in the avoidance of a minor penalty. He is almost a disinterested witness. On the other hand, the officer's interest, in view of the accusation made against him, was far greater and more serious. The testimony of the defendant is more credible. Accusations of attempted bribery, such as those here charged by defendant against the police officer, are common and recently the Municipal Court appointed an official to take such complaints and to investigate them.

247

Even to dwellers in an ivory tower it must appear that there is a considerable factual basis for these accusations and complaints. It is deplorable that such conditions exist and that a few buccaneers, bearing the star and authority of police officers, devote themselves to preying upon the public; and it is especially deplorable because a few greedy, corrupt, criminal and conscienceless police officers stain the reputation of a police department generally composed of a fine body of men. The only way this situation can be controlled is by prompt criminal prosecution and removal from the police force of such derelict officers. The offense of a corrupt police officer is worse than that of an avowed criminal, because the police officer, sworn to enforce the law and clothed with all indicia of authority, violates his oath and his duty to himself and to the public while hypocritically masking himself as an enforcer of the laws which he violates and using the authority with which he is clothed for the purpose of bullying the public and enriching himself.

The pleadings in this case are essential to its determination and we will consider them in spite of the fact that the defendant has raised no question concerning them. The court on the speeding charge (violation of section 103) found the defendant guilty in manner and form charged in the information, and upon that finding entered judgment. The information, upon which the finding was made, charged that the defendant "did . . . operate a certain motor vehicle . . . upon a public highway of this state, to wit, Peterson . . . situated within the corporate limits of the city of Chicago aforesaid, and did then and there unlawfully violate section 49 Speed of the (U.A.R.T.) of the State of Illinois by driving said vehicle at the rate of 42 miles per hour within a zone where the prima facie speed limit was 30 miles per hour."

An information must charge a crime. In the case before us the offense is purely statutory. At com-

mon law such an act was not a criminal offense. A crime can be charged in the words of the statute if all the elements of a crime are therein contained, and it has been held that an information in the language of the statute in a case similar to this was sufficient. People v. Levin, 181 Ill. App. 429. However, in the case before us the defendant was not charged in the language of the statute, nor was the violation covered by the statutory enactment set out in substance. He was charged with violating a rule of adjective law contained in the statute which merely indicates the basis upon which a prima facie case may be proved. It has been held that in order to give the court jurisdiction of the subject matter in a criminal case it is essential that the accused be charged with a crime, and that if he is not so charged, without any necessity of his making a motion to quash or other objection to the pleadings and even in spite of the fact that he has entered a plea of guilty, any judgment rendered against him under such pleadings is void and may be attacked at any time either in direct proceedings on review or collaterally, and that no waiver or consent by a defendant in a criminal prosecution can confer jurisdiction or authorize his conviction in the absence of an accusation charging him with a violation of criminal law. People v. Harris, 394 Ill. 325; People v. Nickols, 391 Ill. 565; People v. Lewis, 13 Ill.App.2d 253. Here the information charges no offense proscribed by law.

The judgments of the trial court on the informations charging a violation of sections 49 and 103 of the Uniform Act Regulating Traffic on Highways are reversed.

Judgments reversed.