**The People of the State of Illinois, Plaintiff-Appellee, v. Jack L. Wesselmann, Defendant-Appellant.**

**Gen. No. M–51,503.**

First District, Fourth Division.

December 8, 1966.

■■■■■■■■■

William R. Bowes, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and E. James Gildea, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

CHARGE: Drag racing.[1]

DEFENSE AT TRIAL: General denial of guilt.

JUDGMENT: After a bench trial before a magistrate the court found the defendant guilty, fined him $45.00, and placed him on probation for six months.

POINTS RAISED ON APPEAL: The charge was not proved beyond a reasonable doubt.

EVIDENCE: Testimony of State witness.

Raymond Giovannelli, a police officer of the Village of Niles, testified that on February 5, 1966, at about 12:30 a. m., he was in the vicinity of Milwaukee Avenue and Waukegan Road, going north on Milwaukee.[2] A verbatim account of the officer's testimony follows:

---

[1] Ill Rev Stats 1965, c 95½, § 145.1. Drag racing.] 48.1. Any person who as an operator of a motor vehicle, is a participant in drag racing shall be confined in the county jail for not more than one year, and the operator's license of such person shall be revoked in the manner provided by Section 6–205 of the "Illinois Motor Vehicle Law," approved July 11, 1957, as heretofore or hereafter amended.

For the purpose of this Section "drag racing" means the act of 2 or more individuals competing or racing on any street or highway in this State in a situation in which one of the motor vehicles is beside or to the rear of a motor vehicle operated by a competing driver and the one driver attempts to prevent the competing driver from passing or overtaking him or one or more individuals competing in a race against time on any street or highway in this State. As amended by act approved Aug 6, 1965. L 1965, p 2711, HB No. 1103.

[2] Milwaukee Avenue runs diagonally in a northwest direction; Harlem Avenue and Waukegan Road are north and south streets. They both intersect Milwaukee Avenue and there are stop lights

Witness: I was proceeding north on Milwaukee and I observed a Plymouth operated by Mr. Wesselmann in the inside northbound lane of Milwaukee Avenue. This Plymouth operated by Mr. Anderson was in the outside lane of Milwaukee Avenue northbound. Mr. Wesselmann passed him at a speed of approximately 45 miles per hour.

Q. What is the speed limit at that location?

A. 40 miles per hour.

· · · · · ·

Q. After he passed Anderson, what did you observe further?

A. I observed Mr. Anderson increase the speed of his automobile to catch up to Mr. Wesselmann. At this time they were abreast and they both slowed to a speed of 30 to 35 miles per hour.

Q. Side by side on Milwaukee Avenue?

A. Yes, sir.

Q. What did you observe further, if you recall?

A. Once they were abreast, remaining abreast, they both increased their speed to approximately 45 miles per hour and stayed abreast and then they approached a red light at Harlem and Milwaukee and they came to a stop.

At this point the police officer arrested the two defendants.

Jack J. Wesselmann testified in his own behalf that on the night in question he was traveling north on Milwaukee Avenue on his way home; that he had turned into Milwaukee at the cemetery road and Touhy Avenue, at which time he had seen a Plymouth car stopped in the right lane; that he had passed the car as he was going north on Milwaukee at a speed of 40 miles an hour. His testimony continued as follows:

---

at both intersections. According to the uncontradicted testimony of the police officer the distance on Milwaukee between Waukegan and Harlem is about one fourth mile.

I continued going north on Milwaukee, as I passed it at a speed of 40 miles an hour. I was just approaching the light at Harlem. I saw it was red, so I lifted my foot off the gas. I would say I was a few blocks away. A block, or a block and a half, maybe. At this time I glanced in my mirror. I saw a car approaching me from the rear. I'd say, ten seconds later, Mr. Anderson pulled up alongside of me and honked his horn. (Wesselmann stated that this was the first time he recognized Anderson.)

He don't own a car; he is an old friend of mine; we used to work together a few years ago. And he recognized me as I went by and he pulled up next to me and honked his horn a few times, and I waived [sic] back to him. [Wesselmann stated that he had slowed down to 30 miles an hour.]

I increased my speed to 40 miles an hour, and Anderson fell a little behind me to the right and I kept going 40 miles an hour. And these lights went on as we were about three quarters of a block from Harlem, still moving. We waited for the light to turn green again and we went around the corner. (At this time both men were arrested.)

Wesselmann denied that he was trying to keep ahead of Anderson, and stated that he was driving with a probationary license.

Donald Anderson testified as follows:

At the light at Waukegan and Milwaukee Avenue, Mr. Wesselmann stopped. We used to work together. I hadn't seen him for a couple of years. He kept on going. And the light changed. It was probably half a block before I actually caught up to him. We were still side by side and I honked at him. I don't think he recognized me at first. He honked back and we

exchanged beeps and he began slowing down for the light and the light changed.

Anderson denied that he was drag racing. The court then questioned Anderson as follows:

Court: Mr. Anderson, when you were parked, you were parked at a dead stop at Milwaukee and Waukegan. And you saw the other defendant Mr. Wesselmann pass you by?

A. The light had just changed and I hadn't started (by) acceleration yet.

Court: How fast was he driving when you first saw him?

A. I really don't know, I couldn't tell.

Court: And you accelerated your car to catch up to Mr. Wesselmann and keep up with him?

A. Yes. At that time I wasn't going over the speed limit.

· · · · · ·

Court: Mr. Wesselmann said you both slowed down to about 30 miles an hour.

A. I was doing 30 miles an hour.

Court: And then you both accelerated side by side, is that correct?

A. Yes.

· · · · · ·

Court: They both slowed down. He has testified they slowed down to 30 miles an hour. And both accelerated side by side.

A. We didn't accelerate.

The court found both Wesselmann and Anderson guilty.

OPINION: In this court the defendants argue that an essential element of the offense of drag racing is the conscious intention of two operators of motor vehicles to compete or race on a street or highway; and secondly,

to act on this intention by attempting to prevent a competing driver from passing or overtaking; and that neither of these two elements was proved beyond a reasonable doubt.

From the testimony of the police officer it could properly be inferred that Wesselmann and Anderson were engaged in drag racing. One or both of them accelerated from a stopped position; they ran side by side after Wesselmann had first gone on ahead; then they both accelerated to a speed beyond the applicable limit until they were stopped by the light which was only a comparatively short distance from where they had started. The statements of the police officer and the defendants as to the physical acts of the defendants are not in substantial contradiction.

All the physical elements of drag racing are present. It then becomes necessary to determine the intent of the two defendants at that time. The police officer, in making the arrest after observing their conduct, concluded that they were drag racing. They both denied it and testified that it was merely a casual encounter on the street by two old friends who had not seen each other for a long time. Both were driving 1965 Plymouths and they admitted that both cars were powerful. Anderson was not driving his own car, but was driving one which belonged to Graves who was a passenger in the car. It then became necessary for the trial court to determine from the evidence before it and its observation of the witnesses testifying, the purpose and intent of the defendants.

 In cases involving violations of the Uniform Act Regulating Traffic on Highways of the State of Illinois, the State has the same requirement as to burden of proof as in other criminal cases. People v. Perlman, 15 Ill App2d 239, 145 NE2d 762. The section of the statute defining drag racing is a comparatively recent addition. The Act was passed and approved in 1965. Consequently, the

cases with reference to the Act are not numerous. In People v. DeMarino, 72 Ill App2d 38, 219 NE2d 132, which opinion was handed down in July 1966, the court interpreted the Act and said:

> "It is necessary under the statute only to show that two or more individuals were competing or racing on a street or highway in this State, and that one of the motor vehicles is to the side or the rear of another vehicle of a competing driver, and that the one driver attempts to prevent the competing one from passing or overtaking him."

. . . . . .

> "It was the function of the trial court to pass upon the credibility of the witnesses and that court in this case concluded that the testimony of the police officer was to be believed over that of the two defendants. The trial judge having seen the witnesses and having observed their demeanor and their candor or lack of candor while testifying, was in a better position than we to determine credibility, and having decided to believe the testimony of the police officer, we will not disturb that finding."

In the DeMarino case the court cited City of Madison v. Geier, 27 Wis2d 687, 135 NW2d 761, in which a defendant was convicted of racing his automobile in violation of a city ordinance. At page 765 the court said:

> "Speed and distance are relative and depend on the nature of the race. A drag race is of short distance to contest superiority in acceleration which may or may not exceed the speed limit. Some races may test the highest speed over a given distance, others only the result. There was neither great speed nor acceleration in the modern sense in the famous race

between the tortoise and the hare in Aesop's fable—but who denies there was a race? We hold that speed to constitute an element of a race under the ordinance does not have to be excessive or illegal and that the distance need only be of such length that it may be reasonably inferred therefrom in connection with other facts that a race was in progress within that distance."

In People v. Stangeland, People v. Shippert, 76 Ill App2d 77, 220 NE2d 748, a recent case in the Second District of the Appellate Court, the court affirmed the verdict of the jury finding the defendants guilty and cited and quoted from People v. Schoop, 288 Ill 44, 122 NE 836, as follows:

" 'It is only when this court is able to say, from a careful consideration of the whole testimony, that there is clearly a reasonable and well founded doubt of the guilt of the accused, that it will interfere on the ground that the evidence does not support the verdict.' "

The court further stated:

"We do not believe that there is clearly a reasonable and well founded doubt of the guilt of the defendants in the case at bar. In most instances, violations of this statute must necessarily be determined by reasonable and logical inferences from the observed conduct of the defendants. . . ."

The inferences to be drawn from the facts in evidence are for the trial court, and unless they are inherently impossible or unreasonable, they should be accepted on appeal. Applying these rules to the case before us, the evidence before the trial court in the instant case was sufficient to support the court's determination that the

defendants were, beyond reasonable doubt, guilty of drag racing.

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER, P. J. and ENGLISH, J., concur.