651 A.2d 1135

**COMMONWEALTH of Pennsylvania**

v.

**Lee Anthony KONDOR, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 1, 1994.

Filed Dec. 23, 1994.

148

Mark E. Lovett, Lancaster, for appellant.

Michael J. Barrasse, Dist. Atty., Scranton, for appellee Com.

Before OLSZEWSKI, DEL SOLE, and BECK, JJ.

OLSZEWSKI, Judge:

This appeal is the latest round in Lee Anthony Kondor's fight over a speeding ticket. We admire Kondor's principled tenacity, and agree with much of his argument. Yet we must affirm his judgment of sentence: a fine and costs totalling $158.00.

In April of 1992, Kondor was caught speeding on Route 6 in Dickson City, north of Scranton. A police officer clocked Kondor's red Audi doing 62 m.p.h. in a 35 m.p.h. zone. Rather than challenging the accuracy of the VASCAR unit which measured his speed, Kondor chose to challenge the appropriateness of the posted speed limit.

Kondor is an engineer with some knowledge of traffic study methodology and driver behavior. He feels that his speed of 62 m.p.h. was perfectly safe and reasonable for that particular stretch of Route 6, and the posted speed limit of 35 m.p.h. has no rational justification save as a money-making scheme for the city enforcing the speed trap. Kondor concedes that the amount of the fine is of no moment to him; rather, he takes umbrage at the notion that he, an expert driver and otherwise law-abiding citizen, should be penalized for exceeding an arbitrarily set and unreasonably low speed limit.

Kondor lost his first challenge to the ticket before a district justice, and appealed for a *de novo* trial in the Court of Common Pleas. To prepare for his hearing, Kondor subpoenaed from the Pennsylvania Department of Transportation (PennDOT) the traffic study upon which the 35 m.p.h. speed limit was based. PennDOT responded that there was no traffic study; the speed was automatically set at 35 m.p.h. because that stretch of Route 6 is in an urban area. *See* 75 Pa.C.S.A. § 3362(a)(1). Kondor therefore took careful mea-

surements of all of the businesses and structures along the road, and was prepared to prove that it did not meet the requirements for an urban classification. *See id.,* § 102 (defining "urban district").

The Commonwealth switched tactics at Kondor's trial. Thomas Ochal, a PennDOT traffic safety engineer, appeared with a copy of a 1985 traffic study on the disputed stretch of Route 6. PennDOT's practice is to base the speed limit on the 85th percentile speed of traffic, which radar studies showed to be about 43 m.p.h. PennDOT normally rounds this down to the nearest multiple of five, so the appropriate speed limit would be 40 m.p.h. Taking the road's high accident rate into account, PennDOT lowered the speed limit by another 5 m.p.h., resulting in the posted 35 m.p.h. speed limit. N.T. 4/2/93 at 11–12. PennDOT's procedures use a speed-determining formula based on federal studies and guidelines. It is complex, but not arbitrary. *Id.* at 25.

In addition to a high accident rate, Route 6 also suffered from serious congestion. Sometime between 1985 and 1992, PennDOT widened this part of Route 6 from three lanes into five lanes. Ochal testified that the widening relieved the congestion, but probably did not reduce the accidents from the heavy cross traffic. Ochal admitted that PennDOT had done no subsequent studies since the road was widened, and that the 35 m.p.h. speed limit was simply left in place on what was essentially a new road. *Id.* at 15–16.

Kondor then testified in his own defense. He introduced a federal traffic report which concluded that posted speed limits have little effect on how fast people go. According to the paper, people will drive as fast as they think reasonable given the condition of the road and visibility. The officer who stopped Kondor did not cite him for careless or reckless driving, but only for exceeding the posted speed limit. 75 Pa.C.S.A. § 3362(a)(3). Kondor argued that 35 m.p.h. was unreasonably low, and for an expert driver like himself 62 m.p.h. was a safe and reasonable speed. *Id.* at 42–50. Kondor did admit that he was doing 62 m.p.h. when stopped, and that the amount of the ticket was not an issue. *Id.* at 50, 57.

The trial court rejected Kondor's defense. It ruled that PennDOT has wide discretion in discharging its statutory duties of conducting traffic studies and setting speed limits, and chose not to question the agency's exercise of discretion. Opinion, 5/6/93. Kondor appeals the trial court's decision to allow PennDOT's 1985 traffic study into evidence, since Penn-DOT surprised him with it at trial despite his subpoena. He also argues that the study is no longer valid for the widened road, so the speed limit is arbitrary and invalid. The Commonwealth counters that Kondor cannot win in any event because he admitted to travelling at 62 m.p.h., which is not a legal speed on any road in the Commonwealth. The Commonwealth also points to some minor technical defects in Kondor's brief, and argues that he has no standing to challenge Penn-DOT's exercise of its administrative power to set speed limits.

We begin by rejecting the Commonwealth's second and third arguments. We have read the entire record, and conclude that Kondor did an excellent job of representing himself in the court below. His arguments are cogent, his presentation concise, and he made a solid record for appellate review—far better than the average summary case. Also, we think that if anyone has standing to challenge a posted speed limit, it would be one convicted of a crime for violating it, albeit just a summary offense.

We also agree with Kondor that PennDOT may not set speed limits arbitrarily. If the Commonwealth could offer no justification for posting a 35 m.p.h. sign on Route 6, Kondor would not be guilty of a crime for merely going faster than 35 m.p.h.

But the Commonwealth did offer some justification for its speed limit. PennDOT went to the trouble of producing its regional traffic safety engineer to testify at Kondor's trial, and explain the minutiae of Route 6's traffic flow. Kondor may argue that PennDOT's methodology for setting the initial 35 m.p.h. speed limit in 1985 was less than optimal, but it was certainly not arbitrary. We will not second-guess PennDOT's traffic safety engineers or re-write the formula

they use to set speed limits. Our review of the record also convinces us that PennDOT's failure to produce the 1985 traffic study did not prejudice Kondor. Even if he had received the report earlier and could have poked more holes in it, we would still not take it upon ourselves to tell PennDOT how to do its job, so long as we are satisfied that the agency is acting rationally.

We thus conclude that PennDOT set a rational speed limit in 1985 for the three-lane Route 6. The interesting question is whether Route 6 essentially became a new road when Penn-DOT added two lanes, calling for a new traffic study and a new speed limit determination. Clearly, most improvements to a road, such as repaving or shoulder widening, would not trigger any duty to recalculate speed limits. Converting something like a narrow, winding two-lane road into a straight, divided multi-lane expressway obviously would call for a reconsideration of speed limits. What of the transformation of Route 6 from a three-lane to a five-lane road?

We need not decide this question, because even if we were to side with Kondor, we would still agree that he is guilty of violating 75 Pa.C.S.A. § 3362. Kondor admitted to travelling at 62 m.p.h., and stipulated that the amount of the fine was not important to him. Therefore, we need not worry about what the proper speed limit should have been; Kondor still would be guilty of exceeding it. See 75 Pa.C.S.A. §§ 3362 and 3363 (limiting maximum speeds to 55 m.p.h.). Kondor's admissions moot his challenge.

We offer one observation for Kondor's benefit. We acknowledge that Kondor may well be an expert driver, perfectly capable of safely negotiating Route 6 at 62 m.p.h. Perhaps if every driver were as well qualified as Kondor, we would have no need to post speed limits at all, trusting individual drivers' discretion instead. Such an approach would mandate very high standards for licensing drivers. Indeed, other societies require licensees to demonstrate a far greater mastery of driving skills and knowledge than we do in the United States.

Because of the way that the automobile has woven itself into our social fabric, our nation has decided that drivers' licenses should be granted upon a much lower showing of minimal competence. In exchange for this liberal access to the road, we allow our government to target its traffic regulations toward the least skilled drivers among us. While an expert driver like Kondor may chafe at what seems an unreasonably low speed limit, other less competent drivers need this kind of regulation; they cannot be trusted to choose an appropriate speed for themselves because they lack the skills to make a prudent choice. Until our legislature decides to grant different classes of drivers' licenses, or raise the standards for everyone, Kondor will simply have to put up with speed limits aimed at controlling worse drivers than himself. This is one of the many inevitable trade-offs one must make for living in a developed, democratic society.

Judgment of sentence affirmed.

DEL SOLE, J., concurs in the result.

BECK, J., files a concurring statement.

BECK, Judge, concurring:

I concur in the result. Appellant failed to establish that the posted speed limit on Route 6 does not comply with the requirements of the Vehicle Code. *See* 75 Pa.C.S.A. § 3111(d) (traffic control devices are presumed to comply with the requirements of the law unless the contrary shall be established by competent evidence). While it is not the Commonwealth's *initial* burden to offer evidence of a traffic and engineering study in this type of case, a defendant seeking to challenge the validity of a posted limit must rebut the presumption of validity with competent evidence. *See Commonwealth v. Kerns,* 278 Pa.Super. 283, 420 A.2d 542, 543 (1980). Here, the Commonwealth's evidence amply supported the validity of the posted limit on Route 6, particularly in light of the Department of Transportation's broad discretion in regulating traffic studies. *See* 75 Pa.C.S.A. § 6105 (department may establish the manner in which traffic and engineering

investigations shall be carried out). Further, the PennDOT traffic engineer's testimony with respect to changes that likely would occur when the road was widened adequately addressed that issue.[1]

Appellant's self-proclaimed "expert driver" status is not relevant. He simply failed to prove that the posted speed limit was invalid and now must pay the fine he properly was assessed when he broke the law.

---

1. Like my colleague, I see no prejudice in allowing the admission of the traffic study. The Commonwealth offered a plausible explanation for the error and appellant points to no prejudice he suffered nor any possibly different outcome which would have resulted from his possession of the study at an earlier date.