# Illinois Official Reports

## Appellate Court

*Village of Mount Prospect v. Kurtev*, 2017 IL App (1st) 170493

| | |
|---|---|
| Appellate Court Caption | VILLAGE OF MOUNT PROSPECT, Plaintiff-Appellee, v. MARTIN KURTEV, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-17-0493 |
| Filed | December 5, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. YE-311-081, YE-311-082; the Hon. James P. Pieczonka, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Martin Kurtev, of Chicago, appellant *pro se*.<br><br>Klein, Thorpe & Jenkins, Ltd., of Chicago (Howard C. Jablecki, of counsel), for appellee. |
| Panel | JUSTICE MASON delivered the judgment of the court, with opinion.<br>Presiding Justice Neville and Justice Pucinski concurred in the judgment and opinion. |

**OPINION**

¶ 1     Following a bench trial, defendant Martin Kurtev was found guilty of speeding and disobeying a traffic control signal in the Village of Mount Prospect (Village). Kurtev appeals *pro se*, arguing the circuit court erred when it did not accept his "defense" that the Village failed to show the relevant speed limit signs, traffic control devices, and road markings complied with the Manual of Uniform Traffic Control Devices (MUTCD) and the speed limit was established based on an engineering study. We affirm.

¶ 2     Kurtev was charged by citations with speeding (driving 16 miles per hour over the posted speed limit) and disobeying a traffic signal (a red light) in the Village. Village police officer Melendez was the only witness at trial. He testified that he was on routine traffic patrol in the area of Golf Road and Oakwood Drive on August 19, 2016. The moving radar in his vehicle was activated. He had checked it prior to his shift and it was calibrated and working properly. Around 2:44 a.m., Melendez was driving westbound on Golf Road, which had a posted speed limit of 40 miles per hour. As he approached Busse Road, he observed the traffic light turn red. Melendez was familiar with the traffic light at the intersection and knew that, if the light was red for westbound traffic, it was also red for eastbound traffic.

¶ 3     Melendez was about 100 feet from the intersection, with a clear view of the incoming traffic, when he saw a 2015 Mitsubishi travel eastbound on Golf Road through the red light at the intersection. As the car drove through the intersection, Melendez's radar captured the vehicle traveling at 56 miles per hour. The Mitsubishi was the only vehicle on the road at the time. After observing the traffic violations, Melendez initiated a traffic stop and issued two citations to Kurtev, the driver, for speeding and running the red light. He rechecked his radar equipment; it was calibrated and working properly.

¶ 4     At the close of the Village's case, Kurtev *pro se* moved for a directed finding, arguing "deficiencies in the evidentiary foundation" of the Village's case. He argued that the Village failed to establish that the speed limit, traffic control devices, and markings on the road where the violations occurred had been set by and conformed to the standards of the MUTCD. Kurtev claimed MUTCD was adopted as the national standard for all traffic control devices on any public street or highway, and it preempted state traffic control laws. He also claimed the Village did not produce the engineering studies required to establish the legality of the speed limit and traffic control devices under MUTCD. Kurtev asserted that, without these engineering surveys, the speed limit and traffic lights were unlawfully posted and his citations based thereon should be dismissed. The trial court denied the motion.[1]

¶ 5     Kurtev presented no evidence, and the court found him guilty of both violations. It issued a $200 fine on the speeding offense, plus fees and costs, and supervision on the red light violation.

¶ 6     Kurtev appeals *pro se*, but his argument is unclear. He states the issue as: "Did the circuit court err when it did not accept Kurtev's defense that traffic citations should be dismissed if they are issued for alleged violations of illegal, fictitious, and/or arbitrary/capricious speed limit signs and traffic control devices, after Kurtev had questioned and the prosecution had

_____

[1]The court also denied Kurtev's second motion for directed finding, which was based on the Village's failure to prove it was authorized to use the radar and Melendez's failure to testify he used a "tuning fork" to test the device. Kurtev does not raise these claims on appeal.

failed to establish that these traffic regulation signs and devices are legal and conform to the federal law requirements set out in [MUTCD]." Kurtev contends "the dispositive issue" is whether the defense "can be asserted in a case involving charges of driving at a speed in excess of a posted speed limit and failure to stop at a red traffic light."

¶ 7　But the record shows the court did not prevent Kurtev from presenting this defense, as it allowed him to make an extensive argument setting forth the defense in his oral motion for a directed finding. Accordingly, the dispositive issue is not whether Kurtev's defense "can be asserted." Rather, it is whether the trial court erred in rejecting the defense and finding Kurtev guilty of the traffic violations.

¶ 8　Kurtev was charged by citation with violating Village code section 18-601(B) for driving a vehicle upon a highway in the Village at 16 miles per hour over the posted speed limit, a speed greater than the applicable statutory maximum speed limit. Mount Prospect Village Code § 18.601(B) (adopted 1981). He was also charged with violating Village code section 18.306(C) for disobeying a traffic control signal, specifically failing to stop at a red traffic light and entering an intersection while the light is red. Mount Prospect Village Code § 18.306(C) (adopted 1981).

¶ 9　The Village municipal traffic code follows the Illinois Vehicle Code (625 ILCS 5/1-100 *et seq.* (West 2016)), which the Village "adopted by reference in its entirety." Mount Prospect Village Code § 18.100 (adopted July 1, 2014). Under section 11-301(a) of the Illinois Vehicle Code, MUTCD was adopted in Illinois to govern local traffic control devices. 625 ILCS 5/11-301(a) (West 2016); *Francis v. Mills*, 214 Ill. App. 3d 122, 124 (1991). The Village code provides that, except for offenses inapplicable here, "[a]ny proceeding resulting from a violation of an Illinois vehicle code regulation, written as a violation of the village code, shall be deemed to be a civil matter for purposes of burden of proof and rules of court." Mount Prospect Village Code § 18.100 (adopted July 1, 2014).

¶ 10　With regard to burdens of proof, the Village code provides that driving at "excessive speed shall be deemed prima facie evidence that such person is driving at a speed greater than is reasonable, proper and safe, having regard to traffic conditions and the use of the street, or endangers the safety of any person or property." Mount Prospect Village Code § 18.602 (adopted 1981). In other words, proof of driving in excess of a posted speed limit raises a rebuttable presumption that the statute has been violated and this presumption is sufficient to establish the prosecution's *prima facie* case. See *People v. Perlman*, 15 Ill. App. 2d 239, 244-45 (1957). Similarly, an official traffic control device "shall be presumed to *** comply with the requirements of [the Illinois Vehicle Code], unless the contrary shall be established by competent evidence." 625 ILCS 5/11-305(d) (West 2016); adopted by reference in Mount Prospect Village Code § 18.100 (adopted July 1, 2014).

¶ 11　Officer Melendez's testimony amply established the elements for both speeding and failing to stop at a red light beyond a reasonable doubt. As summarized above, the Village's evidence of the violations was unrebutted, and it supports the court's conclusion that Kurtev was guilty of both offenses.

¶ 12　Kurtev argues, however, as he did in the trial court, that the Village did not meet its burden to prove the infractions because it failed to show that the speed limit sign and traffic control devices conformed to the MUTCD standards and that the speed limit was established based on an engineering study. Kurtev is correct that, "if and when doubt is raised about the legality of a posted speed limit sign and a traffic light," the prosecution must rebut that evidence in order to

support the traffic citations. See *People v. Russell*, 120 Ill. App. 2d 197, 202 (1970) (speeding conviction reversed where the defendant elicited evidence demonstrating that radar device was improperly located in violation of state traffic statute and the State failed to rebut this "affirmative defense"). But Kurtev raised no such doubt here because he presented no evidence supporting his defense that the Village's traffic signs, traffic devices, and speed limit were "unlawful" for failure to comply with the applicable standards or regulations.

¶ 13        In order to raise the defense, Kurtev was required to present some evidence on the issue unless the Village's evidence raised the issue, which it did not. *People v. Powers*, 89 Ill. App. 2d 120, 121-22 (1967); see *Village of Oakwood Hills v. Diamond*, 125 Ill. App. 3d 58 (1984) (speeding conviction reversed where defendant established at trial that speeding ordinance was invalid). Kurtev recited sections of MUTCD and federal regulations during his argument on the motion for a directed finding. But when the trial court asked Kurtev if he wanted to cross-examine Melendez, put on his own case, or provide any evidence, Kurtev declined, telling the court "I don't have any evidence." In determining the sufficiency of a claim or defense, the court will disregard any conclusions of fact or law that are not supported by allegations of specific fact. *Hartmann Realtors v. Biffar*, 2014 IL App (5th) 130543, ¶ 20. Since Kurtev failed to support his defense with allegations of fact, the court properly rejected it.

¶ 14        Kurtev does not acknowledge his failure to support his defense with evidence. Instead, without citation to Illinois authority, he asserts that the burden is on the Village to establish, as an element of a traffic offense, that the traffic signs, speed limits, and traffic devices comply with federal regulations. However, as noted above, the Village code specifically provides that driving at an excessive speed is *prima facie* evidence of a speeding violation and that traffic controls are presumed lawful, absent "competent evidence" to the contrary. The burden was, therefore, on Kurtev to rebut these presumptions with competent evidence, not on the Village to preemptively prove compliance.

¶ 15        Kurtev admits he has found no Illinois case supporting his position that the prosecution's failure to establish the legality of a posted speed limit or traffic control device is a defense against charges of traffic violations. Neither have we. Kurtev does recite a litany of traffic cases from other states, claiming the courts in these cases "accepted the exact same defense" and dismissed the traffic violation charges.

¶ 16        However, none of the cited cases support Kurtev's contention that the prosecution/municipality must preemptively prove compliance with federally mandated standards as an element of a traffic offense. Rather, they establish that, *if* the driver/defendant presents or elicits competent evidence that a speed limit, traffic sign, or traffic device is not in compliance with applicable regulations, *then* the prosecution must rebut that evidence to show that its traffic laws and signs do comply. See *e.g.*, *City of Oak Ridge v. Brown*, No. E2008-02219-COA-R3-CV, 2009 WL 1272302 (Tenn. Ct. App. May 8, 2009) (speeding conviction affirmed where defendant driver did not provide admissible evidentiary support for his defense that posted speed limit was not legally established); *City of Mentor v. Mills*, No. 12-269, 1988 WL 76764 (Ohio Ct. App. July 22, 1988) (speeding conviction reversed where municipality did not rebut driver's evidence that traffic signs did not meet mandated height requirement); *State v. Morse*, 572 A.2d 1342 (Vt. 1990) (speeding conviction reversed where city clerk was unable to rebut defendant's " 'competent evidence' " showing no engineering study was done to establish speed limit as required by statute); *Commonwealth v.*

*Kondor*, 651 A.2d 1135 (Pa. Super. Ct. 1994) (speeding conviction affirmed where prosecution presented evidence rebutting driver's challenge to engineering studies underlying speed limit).

¶ 17    It was not the Village's initial burden to offer evidence of the engineering studies underlying the speed limit or that the traffic signs and devices complied with applicable regulations. The speed limit and traffic signs and devices are presumptively valid. It was for Kurtev to rebut that presumption with competent evidence, which he failed to do.

¶ 18    For the foregoing reasons, we affirm the judgment of the trial court.

¶ 19    Affirmed.