# Illinois Official Reports

## Appellate Court

---

### *Village of Algonquin v. Sato*, 2018 IL App (2d) 170089

---

| | |
|---|---|
| Appellate Court Caption | THE VILLAGE OF ALGONQUIN, Plaintiff-Appellee, v. MARK E. SATO, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-17-0089 |
| Filed | April 25, 2018 |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 16-TR-31757; the Hon. Jeffrey L. Hirsch, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Mark Sato, of Lakewood, appellant *pro se*.<br><br>No brief filed for appellee. |
| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion.<br>Justices Hutchinson and Birkett concurred in the judgment and opinion. |

**OPINION**

¶ 1     Plaintiff, the Village of Algonquin, charged defendant, Mark E. Sato, with driving over the posted speed limit (Algonquin Municipal Code § 41.01 (amended Dec. 21, 2010) (incorporating by reference 625 ILCS 5/11-601(b) (West 2016))). Defendant proceeded *pro se*. After a bench trial, the court found him guilty and imposed $311 in fines and fees. Defendant, still proceeding *pro se*, appeals. He contends that (1) the judgment was erroneous because there was no proof that a valid engineering survey supported the speed limit and (2) plaintiff did not provide a proper foundation for the evidence of his speed as measured by police radar and the officer's squad-car speedometer. We affirm.

¶ 2     At trial, Algonquin police officer Josh Latina was the sole witness. On direct examination, he testified as follows. On September 27, 2016, at 7:50 a.m., he was on patrol, driving in the middle lane of southbound Randall Road and momentarily stopped at a red light at the intersection with County Line Road. The posted speed limit was 50 miles per hour. As the light turned green, he saw a silver car go through the intersection at a high speed. Latina accelerated, catching up to the car and pacing it, keeping a car length behind. His squad-car speedometer read 75 miles per hour. The squad car, including the speedometer, had been tested every three months. Had the car failed any part of the test, it would have been taken out of service until it was repaired.

¶ 3     Latina testified that he had also activated the car's radar device, a Genesis II directional model mounted on the dashboard. It also read 75 miles per hour. Latina had tested the radar device at 7 a.m. and did so again after the stop. Both times the device passed the test. Latina explained that he used two tuning forks that were set for different speeds. He testified in part, "you hit the metal tuning fork *** on another piece of metal. *** And then you put it in front of the radar unit and it gives you a reading and if the reading matches the speed on the tuning fork, then you know the radar is calibrated properly." Latina activated his emergency lights and pulled over the car, which defendant was driving.

¶ 4     Defendant did not object to any of the testimony about the speedometer or the tests of the radar unit.

¶ 5     On cross-examination, defendant first asked Latina whether he could present the "calibration log" for the radar device. Latina said that he could not. Defendant then asked Latina whether he could present "the traffic engineering survey as *** required by 23 CFR 630 [*sic*] and [the Manual on Uniform Traffic Control Devices (MUTCD)] Title 23 VSA [*sic*] showing that the speed survey [was] less than five years old and that the speed posted was in compliance." Plaintiff objected on grounds of foundation and relevance. Defendant asserted that without the survey the speed limit would not be enforceable. He contended that it was plaintiff's burden to introduce the survey. He had made a request under the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2016)) to the McHenry County State's Attorney's office for the survey report; the office responded that it had no such document, and it referred him to the county's transportation department. Defendant stated that it was not his responsibility to provide the foundation for plaintiff's evidence. The court disagreed that plaintiff had any such burden, and it sustained plaintiff's objection.

¶ 6     Noting that Latina had testified that he had used tuning forks to test the radar device, defendant asked Latina to "present for the purpose of foundation as to [*sic*] the evidence and to the required documents [*sic*] certifying that the tuning forks themselves [were] accurate, [had]

been tested and certified within the last six months." The State objected. The court told defendant that he could not use cross-examination to make Latina produce records but could ask the officer about documents that he might have. Defendant then asked Latina whether he had "the accompanying documentation for the tuning fork accuracy." Latina said that he did not have the documentation with him and did not personally know of it, as testing records were maintained by a supervisor. Asked how he knew that the tuning forks were accurate on the day of the stop, Latina said that he had no way of testing the tuning forks; that was "above [his] pay grade."

¶ 7 Defendant asked Latina whether he had documentation from "an approved speedometer shop certifying the accuracy" of the speedometer that he had used on the day of the stop. Latina responded that he had no such documentation with him and that it would be kept in a file by a supervisor. Latina reiterated that the speedometer was checked every three months as part of preventive maintenance, but he did not personally know about the maintenance procedure.

¶ 8 Defendant tendered the court authorities that, he claimed, were pertinent to the radar and speedometer readings. The court stated that there were two separate potential issues: the admissibility of the evidence, based on the sufficiency of the foundation, and the weight to be accorded to the evidence were it admitted. The court ruled that there was a sufficient foundation for Latina's testimony about the radar and speedometer readings. Latina then testified that, when he first saw defendant pulling away from the intersection, he believed that defendant was speeding. He based his belief on his experience as a traffic officer and on the fact that defendant was driving faster than everyone else on the road.

¶ 9 In its closing argument, plaintiff contended that Latina's observations of defendant, along with the radar and speedometer readings, proved that he had been driving 75 miles per hour in a 50-mile-per-hour zone. Defendant contended that plaintiff had failed to show that an engineering survey had been performed no more than five years before the stop, as needed to make the speed limit valid under federal law. He also argued that plaintiff had failed to introduce evidence that the radar and speedometer had been properly tested and certified as accurate. In reply, plaintiff asserted that, because defendant had not objected when the evidence relating to the radar and speedometer readings was introduced, his arguments on this point went, at the most, to the weight of this evidence, not its admissibility.

¶ 10 The trial court issued a written judgment stating as follows. Based on the evidence, the radar and the speedometer had been accurate and reliable. Although plaintiff had not produced test results for the instruments, there was no evidence that they had not been working properly. Further, plaintiff had not had the burden to produce a traffic-engineering study to validate the speed limit. As Latina's testimony about the radar reading and his personal observation of defendant's driving was unrebutted, plaintiff had proved that defendant had driven 25 miles per hour over the posted speed limit. The court later imposed $311 in fines and fees against defendant. He timely appealed.

¶ 11 Plaintiff has not filed a brief. Nonetheless, we may decide the appeal on its merits. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 12 Defendant contends first that the judgment must be reversed because plaintiff never introduced an engineering survey of the part of Randall Road at issue. Defendant argues that, because the State and McHenry County have adopted the MUTCD, which sets the legal prerequisites for posted speed limits—one of which is the completion of an engineering

survey—plaintiff's failure to prove that the required survey had been performed was fatal to its case.

¶ 13    The First District of the Appellate Court has recently decided this issue. In *Village of Mount Prospect v. Kurtev*, 2017 IL App (1st) 170493, the defendant was found guilty of speeding and disobeying a traffic-control device. On appeal, he contended that the plaintiff never showed that the speed-limit signs, traffic-control devices, and road markings complied with the MUTCD or that the speed limit was based on an engineering study. *Id.* ¶ 1.

¶ 14    The appellate court held that there had been no error. It noted first that the plaintiff's code had adopted by reference the full Illinois Vehicle Code (Code) (625 ILCS 5/1-100 *et seq.* (West 2016)), including section 11-301(a), by which the MUTCD governs local traffic-control devices. *Kurtev*, 2017 IL App (1st) 170493, ¶ 9; see 625 ILCS 5/11-301(a) (West 2016). Further, adopting section 11-305(a) of the Code, the ordinance stated that an official traffic-control device shall be presumed to comply with the requirements of the Code unless competent evidence establishes otherwise. *Kurtev*, 2017 IL App (1st) 170493, ¶ 10; see 625 ILCS 5/11-305(a) (West 2016). The arresting officer's testimony proved that the defendant had violated the speed limit and failed to stop at a red light. *Kurtev*, 2017 IL App (1st) 170493, ¶ 11. Thus, to raise his defense, the defendant had the burden to introduce evidence that the traffic-control signs and devices had failed to comply with the applicable regulations, including the MUTCD's requirements, as the plaintiff had introduced no such evidence. *Id.* ¶¶ 12-13 (citing *People v. Powers*, 89 Ill. App. 2d 120, 121-22 (1967) (alleged violation of statute by placing radar device no more than 500 feet from speed-limit sign was affirmative defense as to which defendant had burden to introduce evidence)). As he had not met his burden, the plaintiff's *prima facie* case had been unrebutted, and the judgment had to be affirmed. *Id.* ¶ 17. The court noted that various foreign authorities on which the defendant relied also placed this burden on the defendants. *Id.* ¶ 16.

¶ 15    We agree with the reasoning of *Kurtev*, which applies to the similar facts here. Here, plaintiff had adopted the Code in full (see Algonquin Municipal Code § 41.01(A) (amended Dec. 21, 2010) (incorporating by reference 625 ILCS 5/1-100 *et seq.* (West 2016))). Thus, to raise his defense, defendant had to introduce competent evidence that plaintiff had failed to comply with the Code's requirement of an engineering survey. Defendant did not do so. He questioned Latina about the existence of a survey, but he had the burden to raise his defense; plaintiff did not have the burden to refute it. Thus, we reject defendant's first claim of error.[1]

¶ 16    Defendant contends, second, that the judgment must be reversed because plaintiff did not lay a sufficient foundation for Latina's testimony that his radar and speedometer clocked defendant's vehicle at 75 miles per hour. Defendant asserts that (1) although Latina used tuning forks to test the radar before and after the stop, plaintiff introduced no evidence that the tuning forks themselves had been tested and certified for accuracy and (2) plaintiff introduced no evidence that the squad car's speedometer had been tested and certified for accuracy.

¶ 17    We note first that, as plaintiff argued in closing, defendant did not object to the admission of Latina's testimony about the radar and speedometer readings but waited until

---

[1]Defendant notes that, despite his FOIA request, he was not provided with a copy of the traffic-engineering survey at any time before or during trial. The significance of this fact is unclear to us, as defendant's claim of error is premised on the theory that it was *plaintiff's* burden to introduce the survey (or evidence thereof).

cross-examination to question Latina about whether the devices had been tested and certified for accuracy. Thus, we agree with plaintiff that defendant forfeited any argument that the testimony at issue was inadmissible, and his arguments went (and now go) only to the weight to be accorded to it. See *People v. Hopson*, 2012 IL App (2d) 110471, ¶ 18. We note, however, that the trial court did consider the foundation issue and held for plaintiff. In any event, though, we do not agree with defendant's claim of error.

¶ 18    Defendant argues in part that the admission of the radar reading required evidence that the tuning forks used to test the radar device had themselves been tested and certified as accurate. As defendant acknowledges, Illinois case law does not support his contention. In *People v. Abdallah*, 82 Ill. App. 2d 312 (1967), a speeding case, the arresting officer tested the radar with a single tuning fork immediately before he stopped the defendant's car and several times later that day. He testified that there had been no outside interference that could have influenced the radar reading. The appellate court deemed this sufficient to admit the radar evidence. *Id.* at 316-17. Relying partly on *People v. Dusing*, 155 N.E.2d 393 (N.Y. 1959), the court held that, if the accuracy of a radar device is unproven, the results will be admissible but will be insufficient to convict; but if there is "reasonable and sufficient proof of the accuracy of the radar instrument," the reading in itself can be sufficient to convict. *Abdallah*, 82 Ill. App. 2d at 316.

¶ 19    Later Illinois opinions have upheld the admission of radar results under similar circumstances. In *People v. Barbic*, 105 Ill. App. 2d 360 (1969), the radar device was tested with a single tuning fork once shortly before the defendant's vehicle was stopped and four times at short intervals afterward. According to the officer who ran the tests, the "possible percentage of error" was less than one percent. *Id.* at 362-63. The appellate court held that the radar evidence was sufficient to prove guilt beyond a reasonable doubt. *Id.* at 369. In *People v. Stankovich*, 119 Ill. App. 2d 187, 190-92 (1970), the court held that the State had laid an adequate foundation by introducing testimony that the radar unit had been sufficiently warmed up and had been tested by a single tuning fork twice before the defendant was stopped. In *People v. Burch*, 19 Ill. App. 3d 360, 363 (1974), the court found sufficient the officer's testimony that he tested his radar apparatus with an "electronic plug-in device" before and after he stopped the defendant. Finally, in *People v. Davenport*, 133 Ill. App. 3d 553, 564-65 (1985), the court deemed the radar evidence admissible and sufficient to convict, although the officer testified only (as far as the opinion discloses) that he conducted "both an internal and an external test for the calibration of the device" about 20 minutes before he stopped the defendant and again about 20 minutes afterward.

¶ 20    Defendant contends that these opinions are outdated because they overestimate the reliability of tuning-fork tests for radar devices. Defendant cites various foreign opinions that, he asserts, require prosecutors to introduce proof that the tuning forks have been tested and certified for accuracy. See, *e.g.*, *State v. Tomanelli*, 216 A.2d 625, 630 (Conn. 1966); *City of Kansas City v. Tennill*, 630 S.W.2d 173, 174 (Mo. Ct. App. 1982); *State v. Carman*, 631 N.W.2d 531, 535-37 (Neb. Ct. App. 2001); see also *City of St. Louis v. Boecker*, 370 S.W.2d 731, 734 (Mo. Ct. App. 1963). He contends that, because there was no evidence that the tuning forks that Latina used had been independently tested for accuracy, the results of the radar were insufficiently reliable to be admitted.

¶ 21    We do not find the foregoing case law compelling ground for a departure from long-standing Illinois precedent. Whatever foreign authority supports defendant, ample

- 5 -

foreign authority calls for upholding the radar evidence under the circumstances of this case. The key consideration is that Latina used two tuning forks, set for different speeds, to test the radar device. We agree with those authorities that, even if testing a radar device with one tuning fork is insufficient, testing it with two or more tuning forks set to different speeds is sufficient, because the tests corroborate each other and thus minimize the likelihood of unreliable results.

¶ 22 Several courts that have rejected reliance on a test with a single uncalibrated tuning fork have endorsed testing with two or more tuning forks, even without independent evidence of their accuracy.[2] *People v. Walker*, 610 P.2d 496, 500 (Colo. 1980); *State v. Ahern*, 449 A.2d 1224, 1226 (N.H. 1982); *People v. Readding*, 389 A.2d 512, 514-15 (N.J. Super. Ct. Law Div. 1978); *State v. Bechtel*, 493 N.E.2d 318, 320 (Ohio Ct. App. 1985). The reasoning of these opinions was well set out by the New Hampshire Supreme Court: "[T]he use of two tuning forks provided sufficient assurance that the tuning forks themselves were accurate, because each tuning fork corroborated the accuracy of the other, and it was highly unlikely that the radar unit and both tuning forks would have been inaccurate to the same degree." *Ahern*, 449 A.2d at 1226; see also *Kramer*, 299 N.W.2d at 885 (although endorsing *Abdallah*, court also noted that arresting officer's use of two tuning forks to test radar device "minimized" risk of tuning-fork inaccuracy).

¶ 23 We find the foregoing authority ample and, more important, highly persuasive. We need not revisit *Abdallah*'s endorsement of a single-tuning-fork test. Here, before and after he stopped defendant, Latina tested the radar device with two tuning forks that were set to different speeds. Even were we to depart from Illinois authority, we would uphold the admission of the radar evidence and conclude that it was sufficient in itself to prove speeding.

¶ 24 Defendant also contends that plaintiff did not lay a sufficient foundation for Latina's testimony that his speedometer measured defendant's speed at 75 miles per hour. We need not address this contention, as any error was harmless. The radar evidence and Latina's personal observation of defendant's car amply supported the judgment. This is especially so because plaintiff had to prove only that defendant had exceeded 50 miles per hour—and the radar clocked him at 75 miles per hour. To hold this evidence insufficient, the court would have had to conclude that the radar was not merely off but wildly inaccurate and that Latina was a very poor judge of vehicular speed. See *Commonwealth v. Whynaught*, 384 N.E.2d 1212, 1216 (Mass. 1979) (minimal foundation for radar evidence did not prevent affirming conviction of speeding, as reading was 20 miles per hour over speed limit and officer's observations corroborated it).

¶ 25 For the foregoing reasons, the judgment of the circuit court of McHenry County is affirmed.

¶ 26 Affirmed.

---

[2]We also note that several jurisdictions hold consistently with *Abdallah* that independent proof of the accuracy of the tuning forks is not required. See *State v. Tailo*, 779 P.2d 11, 14 (Haw. 1989); *Shears v. State*, 648 P.2d 841, 841-42 (Okla. Crim. App. 1982); *State v. Sprague*, 322 A.2d 36, 39-40 (R.I. 1974); *State v. Kramer*, 299 N.W.2d 882, 885-86 (Wis. 1981).